JESSE A. BUSS, OSB # 122919
WILLAMETTE LAW GROUP
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jesse@WLGpnw.com

Attorney for Plaintiffs
COMMITTEE TO RECALL DAN HOLLADAY,
JEANA GONZALES, and ADAM MARL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COMMITTEE TO RECALL DAN HOLLADAY, JEANA GONZALES,** and **ADAM MARL,**<br><br>Plaintiffs,<br><br>vs.<br><br>**KATTIE RIGGS**, City Recorder for Oregon City, in her official capacity,<br><br>Defendant. | Case No. 3:20-cv-01631-YY<br><br>**PLAINTIFFS' RESPONSE TO STATE OF OREGON'S AND DEFENDANT'S MOTIONS TO DISMISS** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES……………………………………………………………..iii

INTRODUCTION……………………………………………………………….…..…..1

ARGUMENT……………………………………………………………………….……….…..1

    A. The allegations of the complaint are sufficient to support Plaintiffs' standing……….1

        1.   The complaint sufficiently alleges injury in fact…………………………………2

        2.   To support their standing, Plaintiffs are not required to allege an immediate
            threat of repeated injury from Defendant Riggs…………………………………..4

        3.   Even if Plaintiffs' claims have become moot, the allegations of the complaint
            are sufficient to avoid dismissal under the doctrine of "capable of repetition, yet
            evading review."………………………………………………………………..6

        4.   The allegations of the complaint support a recovery of nominal damages………10

            a.   Defendant Riggs caused a completed injury to Plaintiffs when she insisted
                that she would enforce the 90-day signature gathering deadline……………10

            b.   Oregon City is not immune from a damages award………………………...12

                i.   Defendant Riggs was acting according to municipal policy, practice,
                    or custom, so Oregon City is liable for nominal damages………………12

                ii.   Plaintiffs do not seek damages against Defendant Riggs in her personal
                    capacity, so the State's qualified immunity argument is irrelevant………..16

        5.   The Eleventh Amendment does not bar Plaintiffs' request for declaratory relief
            because Defendant Riggs is not a state actor……………………………………16

    B. The State's request for *Pullman* abstention is inappropriately included in this
        motion to dismiss.……………………………………………………………………17

C. Plaintiffs' allegation that the 90-day signature gathering limitation unduly burdens core political speech under the 1st and 14th Amendments is viable………19

    1. The First Amendment applies to ballot petition deadlines because they make it less likely that proponents can obtain the necessary signatures to place issues on the ballot……………………………………………………………………...21

    2. The State's attempt to litigate the factual reasonableness of the 90-day deadline is inappropriate in the motion to dismiss context…………………………24

D. Plaintiffs' state law claims should not be dismissed………………………………...24

    1. This Court has jurisdiction over the state law claims…………………………...25

      a. *Pennhurst* does not apply……………………………………………………..25

      b. The Court should retain supplemental jurisdiction over the state law claims...25

    2. Plaintiffs raise meritorious, unresolved questions of Oregon constitutional law..26

CONCLUSION…………………………………………………………………………………33


APPENDIX

    Or. Rev. Stat. 249.875(1)…………………………………………………………APP-1

    Or. Const., Art. II, § 18………………………………………………………………APP-2

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012)..............................7, 33

*Angle v. Miller*, 673 F3d 1122 (9th Cir. 2012).................................................................21, 22, 23

*Castro v. Cty. of Los Angeles*, 797 F.3d 654 (9th Cir. 2015).........................................................15

*Cloud v. Dyess*, 172 So 2d 528 (La. 1965)..................................................................................33

*Columbia Basin Apt. Assoc. v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001)...............................17

*Connick v. Thompson*, 563 U.S. 51 (2011)..................................................................................15

*Davis v. Fed. Election Comm'n*, 554 U.S. 724 (2008)....................................................................8

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017).........................................................19

*Fair Maps Nevada v. Cegavske*, No. 3:20-cv-00271-MMD-WGC, 2020 WL 2798018
     (D. Nev. May 29, 2020).........................................................................................................23

*Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167 (2000)...........................1

*Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013).....................................................12

*Int'l Org. of Masters, Mates & Pilots v. Brown,* 498 U.S. 466 (1991)...........................................8

*Joyner v. Mofford,* 706 F.2d 1523 (9th Cir. 1983)...........................................................................8

*Lee v. Schmidt-Wenzel*, 766 F.2d 1387 (9th Cir. 1985)..................................................................5

*Little v. Reclaim Idaho*, 2020 WL 3490216 (D. Idaho 2020), *stayed on appeal by*
     140 S. Ct. 2616 (2020)...........................................................................................................23

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569–70 n.4 (1992)..................................................1

*Meyer v. Grant*, 486 U.S. 414 (1988).....................................................................................21, 23

*Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___ (2019)..............................10

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)....................................................................15

*Nelson v. King Cty.,* 895 F.2d 1248 (9th Cir. 1990)......................................................................4

*Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916 (9th Cir. 2004)..............................................9

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)..............................................25

*People Not Politicians Oregon v. Clarno*, No. 6:20-cv-01053-MC (D. Oregon 2020)................23

*Porter v. Jones,* 319 F.3d 483 (9th Cir. 2003)...............................................................................8

*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman*")..........17, 18, 20, 26

*Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838 (9th Cir. 1979)...............17

*Schaefer v. Townsend*, 215 F.3d 1031 (9th Cir. 2000)....................................................................8

*State ex rel. Clark v. Harris*, 74 Or 573 (1914) ("*Harris*")....................................13, 28, 29, 30, 32

*Sterling v. Cupp*, 290 Or. 611, 625 P.2d 123 (1981)....................................................................20

*Thompson v. City of Los Angeles*, 885 F.2d 1439 (9th Cir. 1989), *overruled on other grounds*
    by *Bull v. City & Cty. of San Francisco,* 595 F.3d 964 (9th Cir. 2010) (en banc)............15

*Uzuegbunam v. Preczewski*, 592 U.S. ____ (2021)......................................................1, 10, 11, 12

*Western Helicopter Services, Inc., v. Rogerson Aircraft Corporation*, 311 Or. 361,
    811 P.2d 627 (1991)............................................................................................................18

*Wolfson v. Brammer*, 616 F.3d 1045, 1054-1055 (9th Cir. 2010)................................................7, 8

## Constitutional Provisions

Or. Const., Art. II, § 18..............................................................................................*passim*

Or. Const., Art. XI, § 2.......................................................................................................14

U.S. Const., 1st Amd..........................................................................................*passim*

U.S. Const., 11th Amd.................................................................................................16, 25

U.S. Const., 14th Amd..................................................................................................*passim*

### Statutes

42 U.S.C. § 1983.......................................................................................................12

Or. Rev. Stat. Title 23................................................................................................14

Or. Rev. Stat. 249.875(1).........................................................................................*passim*

Or. Rev. Stat. 250.255...............................................................................................13

### Oregon City Charter

Or. City Charter, Ch. II, § 4......................................................................................14

Or. City Charter, Ch. II, § 5......................................................................................14

Or. City Charter, Ch. VI, § 26...........................................................................12, 14, 15

### Local Rules

LR 7-1(a)(3).............................................................................................................17

LR 7-2(b)(1).............................................................................................................20

LR 83-14(a)..............................................................................................................18

### Other Authorities

*1 T. Sedgwick, Measure of Damages 71* (7th ed. 1880)............................................10

37 Op. Atty Gen. Ore. 1399 (1976).....................................................27, 28, 29, 31

J.D. Barnett, Operation of Initiative, Referendum, and Recall in Oregon, (1915).......................31

Oregon Journal, May 10, 1914..................................................................................31

## INTRODUCTION

The State of Oregon, a proposed intervenor, filed a motion to dismiss Plaintiffs' complaint. ECF 21 ("Mot."). Defendant Riggs, on behalf of the real party in interest, the City of Oregon City, also filed a motion to dismiss, but that motion is cursory and simply joins in the State of Oregon's motion. *See* ECF 23 at 2-5. For the sake of simplicity, together the State of Oregon, Defendant Riggs, and the City of Oregon City are collectively referred to herein as "the State," unless otherwise noted.

Plaintiffs now respond to the motions to dismiss.

## ARGUMENT

### A.  The allegations of the complaint are sufficient to support Plaintiffs' standing.

We are still in the pleading stage of litigation. No evidence has been offered, or will be offered, at this stage. At the pleading stage, the court must accept the allegations of the complaint as true. Therefore, for purposes of the State's motion to dismiss, the allegations in the complaint regarding Plaintiffs' standing are assumed to be true. Those allegations are more than sufficient to survive the State's attack on Plaintiffs' standing.

Standing is judged as of the date the original complaint is filed. *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 180 (2000) ("*Laidlaw*"). It is a snapshot in time; if a plaintiff has standing on the date a case is filed, then they have standing throughout the case, regardless of changed circumstances. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 569–70 n.4 (1992) (it is a "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed."). This is distinct from the analysis under mootness doctrine, which is sensitive to altered post-filing circumstances. *Uzuegbunam v. Preczewski*, 592 U.S. \_\_\_\_ (2021), slip op at *1 ("The doctrine of standing generally assesses whether [a plaintiff's personal

interest in the dispute] exists at the outset [of a case], while the doctrine of mootness considers whether it exists throughout the proceedings."). This case was filed on September 18, 2020. ECF 1. Plaintiffs had standing on that date. Nothing that happened after September 18, 2020, is relevant to the standing analysis.

### 1. The complaint sufficiently alleges injury in fact.

The State argues that plaintiffs have not alleged a cognizable injury. Mot. at 6. Not so. First, in making this argument the State improperly relies on events that happened *after* this case was filed. Those events are irrelevant to the standing analysis. And second, the allegations of the complaint are sufficient to support Plaintiffs' standing.

As a preliminary matter, the State improperly relies on post-filing events to justify its standing argument. Such reliance is misplaced where the standing analysis focuses exclusively on the facts as they exist on the date a case is filed. *See Laidlaw*, 528 U.S. at 180. Specifically, the State asserts that Plaintiffs lack standing because they ultimately "succeeded in their effort to recall Oregon City Mayor Dan Holladay." *Id.* But Plaintiffs did not qualify for the ballot until well *after* the complaint was filed. *Compare* Complaint, ECF 1 (filed on September 18, 2020) *with* First Amended Complaint (FAC), ECF 19, ¶¶ 26-27 (alleging that, on October 1, 2020, Ms. Riggs certified that a sufficient number of recall petition signatures had been submitted, and called an election for November 10, 2020); *see also id.* at ¶ 25 (raw signatures not fully submitted until September 21, 2020). Those post-filing events are irrelevant to the standing analysis as a matter of law.

These post-filing events raised by the State are also factually irrelevant to the injury in fact analysis. It doesn't matter that Plaintiffs eventually succeeded in forcing a recall election against Mr. Holladay, or that the election resulted in Mr. Holladay's removal from office; the

harm that Plaintiffs allege isn't that they were *prevented* from forcing a recall election, but rather that Defendant Riggs' actions made it *more difficult* to qualify the recall for the ballot. *See, e.g.*, FAC, ECF 19, ¶¶ 21-23 (Defendant Riggs establishing and refusing to modify 90-day deadline to submit recall petition signatures). Plaintiffs further allege that "Plaintiffs' entire recall petition campaign effort and signature gathering strategy was shaped by the pressure and demands of the 90-day signature gathering deadline imposed by Ms. Riggs pursuant to Or. Rev. Stat. 249.875(1). That effort and strategy was more expensive, more difficult, and more likely to fail than it would have been had it not been burdened by a 90-day signature gathering deadline." *Id.* at ¶ 28. Considering that Or. Rev. Stat. 249.875(1) is the statute that Plaintiffs are challenging in this action, and Ms. Riggs was the election officer that enforced that statute, Plaintiffs' allegations are sufficient to support the injury in fact element of standing.

Finally, the State argues that Plaintiffs have not alleged an injury that is traceable to Defendant Riggs, as opposed to the COVID-19 pandemic and the 2020 wildfires and related evacuations. Mot. at 7. But that argument ignores that Plaintiffs have asserted both facial and as-applied challenges to the 90-day signature gathering deadline of Or. Rev. Stat. 249.875(1). The factual allegations of the complaint that relate to the pandemic and the wildfires are associated with the as-applied challenge, whereas Defendant Riggs' enforcement of the 90-day deadline relates to both the as-applied challenge and the facial challenge. The allegations regarding Defendant Riggs' conduct, and the resulting harm, is addressed in the prior paragraph. The complaint therefore adequately alleges a concrete injury fairly traceable to the actions of Defendant Riggs.

**2.  To support their standing, Plaintiffs are not required to allege an immediate threat of repeated injury from Defendant Riggs.**

The State argues, incorrectly, that "to maintain standing for prospective relief [Plaintiffs] must also show the immediate threat of repeated injury from the same defendant." Mot. at 7. There is no such requirement. As discussed above, standing is judged as a snapshot in time, on the date of commencement of the action. It makes no sense to talk of "maintaining" standing; if you have it on the day you file a case, then you have it throughout the case, regardless of subsequent changed circumstances.[1] The suggestion that a "repeated injury" is required to support ongoing standing is, therefore, incorrect. And there is simply no "same defendant" requirement.

The cases cited by the State are inapposite. To support its assertion that Plaintiffs must "maintain" standing by alleging facts supporting an imminent repeated injury, it cites *Nelson v. King Cty.,* 895 F.2d 1248 (9th Cir. 1990). Mot. at 7. In *Nelson*, the plaintiffs, two former residents of an alcoholic treatment center, brought suit against the treatment center, seeking injunctive relief against alleged constitutional violations. 895 F.2d at 1249. Neither one was a resident of the treatment center during the time they were parties to the lawsuit, and thus their claims of standing were predicated entirely on the possibility that they might, someday, return to the treatment center. *Id.* This case is distinguishable from *Nelson* for several reasons. First, Plaintiffs in this case are not just seeking injunctive relief; they are also seeking declaratory relief and damages. FAC, ECF 19 at 15-16. And second, as to injunctive relief, here, unlike in *Nelson*, Plaintiffs commenced their action while they were still subject to the alleged wrongful conduct.

---

[1]    Unlike standing analysis, *mootness* analysis, discussed later in this response brief, is sensitive to post-filing changed circumstances.

While the *Nelson* plaintiffs waited to file their lawsuit until well after the complained-of harm was completed, Plaintiffs here filed this litigation *during* the challenged 90-day signature gathering period, three days before they turned in their final signatures to Defendant Riggs. ECF 1 (filed September 18, 2020); *id.* at ¶ 23 (signatures remaining to be turned in before September 21st deadline). Therefore, on the day the complaint was filed, Plaintiffs were subject to the ongoing harm caused by Defendant Riggs' imposition of the 90-day deadline under Or. Rev. Stat. 249.875(1). That is sufficient to confer standing as to future injunctive relief. Had Plaintiffs waited to file this litigation until *after* Defendant Riggs' October 1st certification that a sufficient number of signatures had been submitted to trigger a recall election, ECF 19 at ¶ 26, then *Nelson* might apply, but they did not, and it does not.

Neither is *Lee v. Schmidt-Wenzel*, 766 F.2d 1387 (9th Cir. 1985), helpful to the State. The State cites *Lee* for the proposition that, to "maintain" standing, Plaintiffs must allege that they will be subject to future, identical harm from Defendant Riggs. Mot. at 7. But *Lee* says no such thing, and that is not the law of the Ninth Circuit. *Lee* is not a standing case; the word "standing" does not even appear in that decision. Rather, it is a case about mootness. *Lee*, 766 F.2d at 1388-1391. Standing and mootness are not the same thing. While the State, later in its brief, argues that this case has become moot, *Lee* has no place in the portion of the State's brief challenging Plaintiffs' standing.[2] *See* Mot. at 7-9. There simply is no requirement, in the 9th Circuit or anywhere else, that a plaintiff must allege future repeated harm from the same defendant in order to "maintain" standing.

---

[2]    Plaintiffs address *Lee* in the following section, where they respond to the State's mootness argument. For now, suffice it to say that *Lee* does not apply to this case, and that the 9th Circuit does not impose a "same defendant" requirement in elections cases, like this one, that are capable of repetition, yet evading review.

### 3. Even if Plaintiffs' claims have become moot, the allegations of the complaint are sufficient to avoid dismissal under the doctrine of "capable of repetition, yet evading review."

This case remains at the pleading stage, and no evidence of any kind has been submitted to the court. So, in addressing the State's motion to dismiss, all we have to rely on are the allegations of Plaintiffs' complaint. The court must presume the truth of those allegations and construe them in the light most favorable to the non-moving party (i.e. Plaintiffs). It is, therefore, odd that the State has included in its motion an argument that "Plaintiffs' claims are not capable of repetition." Mot. at 10. That argument is odd, first, because the State skips the actual mootness analysis and goes straight to addressing the "capable of repetition, yet evading review" exception to mootness. While a claim of mootness is briefly mentioned in the State's "Introduction" section, the State never develops it. *Id.* at 2 ("[E]ven if Plaintiffs had standing when this case was filed, their request for injunctive relief is now moot."). Instead, the first time the word "moot" appears in the motion's argument section is on page 10, where the State argues that the *exception* to mootness for "capable of repetition, yet evading review" does not apply. *Id.* at 10. The State has, seemingly, put the cart before the horse by assuming that the case it moot and moving directly to the exceptions analysis. But Plaintiffs do not concede that their claims are moot, and the State has failed to carry its burden to demonstrate that they are.

The second oddity is that the State bothers to undertake the "capable of repetition, yet evading review" analysis at all. That inquiry is very fact dependent, and we are only in the pleading stage. At this early stage Plaintiffs are not required to come forward with evidence to support their claims; they are able to appropriately rely on their pleadings. And, even assuming (but not conceding) that Plaintiffs' claims are moot, the allegations of the complaint are sufficient to demonstrate that the issues in this case are, in fact, capable of repetition yet evading

PAGE 6 – RESPONSE TO MOTIONS TO DISMISS

review. For example, the complaint alleges that the two individual plaintiffs, Jeana Gonzalez and

Adam Marl, both "intend[] to participate in future recall petition campaigns at the local, county,

regional, and state levels." FAC, ECF 19, at 4. In Mr. Marl's case, that participation will be both

personal and professional. *Id.* at ¶ 11 (discussing Mr. Marl's professional plans, which include

political campaign management, political consulting, and related work). Those allegations

(including the statement that plaintiffs intend to participate in future *local* recall petition

campaigns, which necessarily would involve Defendant Riggs), are sufficient to survive a motion

to dismiss at the pleading stage. *See Wolfson v. Brammer*, 616 F.3d 1045, 1054-1055 (9th Cir.

2010) (candidate's stated intend to seek office "at some point in the future" sufficient to create

reasonable expectation that elections dispute was capable of repetition under mootness

exception). And even if the Court finds that those allegations of the complaint are not specific

enough, the proper result is not dismissal, but rather direction to Plaintiffs to re-plead with more

specific factual allegations regarding their intent to participate in future recall petition

campaigns. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)

("*County of Tulare*").

     The State is also wrong in asserting that, under the "capable of repetition, yet evading

review" analysis, Plaintiffs must show that any future dispute would be between them and

Defendant Riggs (as opposed to some other election officer). *See* Mot. at 10 (citing *Lee*); *id.* at

12 ("Plaintiffs have not shown any likelihood that this same dispute will recur with *this*

*Defendant*.")(emphasis added). There is no such requirement in the Ninth Circuit. Neither has the

Supreme Court established such a requirement. The "capable of repetition, yet evading review"

exception to mootness applies "where (1) the challenged action is in its duration too short to be

fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the

*same complaining party* will be subject to the same action again." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 736 (2008) (emphasis added). The first element is clearly met where, as here, the challenged action relates to enforcing a 90-day signature gathering requirement. No case can be fully litigated in 90 days. *See Porter v. Jones,* 319 F.3d 483, 490 (9th Cir. 2003) ("Election cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits."); *see also Joyner v. Mofford,* 706 F.2d 1523, 1527 (9th Cir. 1983) (election cases are likely to escape review because appellate review often cannot be completed during the brief duration of an election). And the second element only requires that the "same complaining party" may be impacted by the future action, not that the same *defending* party be the one to take that future action.

Indeed, the State has pointed to no Ninth Circuit case enforcing such a "same defendant" requirement in the elections context. Instead, the State cites *Lee*, which is inapposite because that case involved only private parties, not public officials in the elections context. 766 F.2d at 1390 ("When the litigation is between *private* parties, we must consider whether the anticipated future litigation will involve the same defending party as well as the same complaining party.") (emphasis added). The Ninth Circuit has never applied that "same defendant" standard in the public elections context. To the contrary, it routinely finds otherwise moot cases to be capable of repetition even when the future hypothetical defendant elections officer is unknown. *See, e.g., Schaefer v. Townsend*, 215 F.3d 1031, 1032-1033 (9th Cir. 2000) (only Riverside County election officer took challenged action, but action capable of repetition in California on a statewide level by other election officers); *Wolfson*, 616 F.3d at 1055 (stated intention to seek elected office at "some point" in the future is sufficient to show issue is capable of repetition, even where plaintiff did not specify when or where they might file for office); *see also Int'l Org. of Masters, Mates &*

*Pilots v. Brown,* 498 U.S. 466, 473 (1991) (holding an election case not moot because "[r]espondent has run for office before and may well do so again"). Therefore, although Plaintiffs have alleged their intent to participate in *local* Oregon City recall petition campaigns in the future, ECF 19 at 3-4, they were not required to do so. Their allegations regarding their intended future involvement in "county, regional, and state level[]" recall petition campaigns are also sufficient to show that the 90-day signature gathering deadline issue is capable of repetition yet evading review. *Id.*

        And finally, the State's evidentiary attack on Plaintiffs' complaint is inappropriate in a motion to dismiss. *See* Mot. at 10 ("Plaintiffs also cannot show that the factual bases of their as-applied claims [] are likely to persist until their next recall attempt."). The State did not file a motion for summary judgment; it filed a motion to dismiss based on the allegations of the complaint. The parties agreed upon and jointly filed, and the Court endorsed, a preliminary case management schedule that contemplated the State's filing of a motion to dismiss, *not* a motion for summary judgment. *See* ECF Nos. 16 & 17. Therefore, the State's evidentiary arguments, and its attempts to dump substantial COVID-related evidence into the record, Mot. at 10-12, are inappropriate. *See Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 921-922 (9th Cir. 2004) (If matters outside the pleadings are considered, the motion to dismiss under Rule 12(b)(6) is treated as one for summary judgment). It is irrelevant to the motion to dismiss that the State thinks it can defeat Plaintiff on the evidence. Evidence regarding the current rates of COVID-19 infections, the now-available vaccinations, etc., does not belong in the record at this point. The analysis, for now, must be confined to the allegations of the complaint and how the law applies to those allegations. The Court should therefore reject the State's evidentiary arguments and attempts to place evidence in the record at this early procedural posture. The appropriate place to

resolve these issues will come later in the case, on Plaintiffs' motion for summary judgment, where Plaintiffs, who carry the burden to prove their claims, will have the opportunity (and briefing space) to fully explicate their arguments and to file a subsequent reply brief. This motion to dismiss provides none of those opportunities to Plaintiffs.

In summary, the State has not even attempted to show that Plaintiffs' claims are moot and, in any event, its analysis regarding the "capable of repetition, yet evading review" mootness exception is wrong. If Plaintiffs' claims are moot, they are capable of repetition.

### 4.   The allegations of the complaint support a recovery of nominal damages.

The State claims that "it is a legal certainty that Plaintiffs cannot recover nominal damages." Mot. at 12. Not so.

#### a.   Defendant Riggs caused a completed injury to Plaintiffs when she insisted that she would enforce the 90-day signature gathering deadline.

The Supreme Court held earlier this year that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*, 592 U.S. at *11. Further, a party whose rights are invaded can *always* recover nominal damages without furnishing any evidence of actual damage. *Id.* at *7 (citing with approval *1 T. Sedgwick, Measure of Damages 71* (7th ed. 1880)); *see also id.* at *10 ("If there is any chance of money changing hands, [the] suit remains live) (citing *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ____ (2019)). The State claims that Plaintiffs have not adequately alleged a "completed violation of a legal right," so nominal damages are not available. Mot. at 12. As explained below, the State's portrayal of *Uzuegbunam* is not accurate. Nominal damages are available in this case.

*Uzuegbunam* expands, rather than restricts, the availability of nominal damages. In that case, the first two elements of standing (i.e. an (1) injury in fact that is (2) fairly traceable to the challenged conduct) were already established and not in dispute. *Uzuegbunam*, 592 U.S. at *3. The only element of standing at issue was redressability. *Id.* Specifically, the question before the Court was whether a plaintiff who sues over a *wholly past injury* can meet the redressability element of standing by requesting *only* nominal damages, and not any other form of relief. *Id.* In holding that a prayer for past injury nominal damages is sufficient, by itself, to meet the redressability prong of standing, the Court did not even hint that *only* past injuries qualify for nominal damages. Incomplete or ongoing injuries and threatened future injuries can also justify an award of nominal damages. Indeed, the parties in *Uzuegbunam* agreed on that point. *Id.* at *4-5 ("The parties here agree that courts at common law routinely awarded nominal damages [...] The parties disagree, however, about whether nominal damages alone could provide retrospective relief. Stressing the declaratory function, respondents argue that nominal damages by themselves redressed only continuing or threatened injury, not past injury.").

Here, the complaint alleges past *and* continuing or threatened injury. It alleges that Defendant Riggs initially established a 90-day signature gathering deadline pursuant to Or. Rev. Stat. 249.875(1). ECF 19 at 7-8, ¶ 21. It further alleges that when, in the middle of the 90-day period, Plaintiffs challenged that deadline via letter, asking Defendant to extend it, *id.* at ¶ 22, Defendant Riggs specifically refused. *Id.* at ¶ 23. Indeed, Plaintiffs allege, their "entire recall petition campaign effort and signature gathering strategy was shaped by the pressure and demands of the 90-day signature gathering deadline imposed by Ms. Riggs pursuant to Or. Rev. Stat. 249.875(1). That effort and strategy was more expensive, more difficult, and more likely to fail than it would have been had it not been burdened by a 90-day signature gathering deadline."

PAGE  11 – RESPONSE TO MOTIONS TO DISMISS

*Id.* at ¶ 28; *see also id.* at Ex. 4, pp. 1-3 (detailing costly, creative, and unusual methods of signature gathering used by Plaintiffs). These allegations sufficiently allege past injury, as well as ongoing and threatened future injury. Accordingly, even if the State's reading of *Uzuegbunam* was correct, it would not preclude an award of nominal damages.

### b. Oregon City is not immune from a damages award.

As the State correctly points out, a suit against a governmental officer in her official capacity is equivalent to a suit against the government entity itself. Mot. at 12. So, although Kattie Riggs is the named defendant in this action, because she is sued only in her official capacity as City Recorder, the City of Oregon City is the real party in interest. Thus, when the State argues that Defendant Riggs "is immune" from Plaintiffs' claim for nominal damages, *id.*, it's really arguing that *the City* is immune from Plaintiffs' claim for nominal damages. The State is wrong.

### i. Defendant Riggs was acting according to municipal policy, practice, or custom, so Oregon City is liable for nominal damages.

The State argues that Defendant Riggs, when she imposed the 90-day signature gathering limitation, was "acting at the State's direction," and not according to local municipal policy, practice, or custom. Mot. at 12-13. It further argues that Defendant Riggs was not the "final policymaker." *Id.* For both reasons, the State says, Plaintiffs cannot recover nominal damages in this case. *Id.* The State is incorrect.

Pursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its officials according to municipal policy, practice, or custom. *Goldstein v. City of Long Beach*, 715 F.3d 750 (9th Cir. 2013). Because Ms. Riggs was acting pursuant to local Oregon City policy (Or. City Charter, Ch. VI, § 26), past practice, and City custom when she

imposed and enforced the 90-day signature gathering limitation, the City is liable for any nominal damages associated with her action.

Or. Rev. Stat. 249.875(1), which contains the challenged 90-day signature gathering limitation, was adopted by the Oregon Legislature and applies to *statewide* recall petitions. It does not, by itself, apply to home rule cities like Oregon City, which derive their recall powers directly from Article II, section 18 of the Oregon Constitution. Because Or. Rev. Stat. 249.875(1) does not directly apply to Oregon City, and is instead applicable to Oregon City only by virtue of an Oregon City Charter provision, Defendant Riggs was not, as the State asserts, "acting at the State's direction." Mot. at 13.

First, nothing in Or. Rev. Stat. 249.875(1) purports to make its provisions applicable to cities. APP at 1. This contrasts with the statutory scheme governing the initiative and referendum, which expressly states that it *does* apply to cities "unless the city charter or ordinance provides otherwise." Or. Rev. Stat. 250.255. There is no similar statutory language purporting to make the recall statutes applicable to cities.

Second, because the recall right contained in Article II, section 18 of the Oregon Constitution is self-executing under *State ex rel. Clark v. Harris*, 74 Or 573, 585 (1914) ("*Harris*"), Oregon City electors have full access to the recall power without any need for or reference to state statute. *See id.* at 584 ("There is nothing in [section 18] indicating an intention that the right of recall should be dependent upon the action or will of the Legislature."). In the absence of an enabling/dependent relationship between Or. Rev. Stat. 249.875(1) and Oregon City's recall power, there is no reason to impose the former's 90-day restriction on the latter.

And third, even if the Oregon Legislature *did* intend the 90-day limitation of Or. Rev. Stat. 249.875(1) to apply to cities, that limitation would be void as conflicting with Oregon

City's home-rule authority to draft and amend its own charter, free of interference from the

Oregon Legislature. Article XI, section 2 of the Oregon Constitution, known as the "home rule

amendment," provides in part:

> "The Legislative Assembly shall not enact, amend or repeal any charter or act of
> incorporation for any municipality, city or town. The legal voters of every city
> and town are hereby granted power to enact and amend their municipal charter,
> subject to the Constitution and criminal laws of the state of Oregon[.]"

The Oregon City Charter takes maximum advantage of the home rule amendment. For example,

Chapter II, section 4 of the Charter states that "[t]he city shall have all powers which the

constitutions, statutes, and common law of the United States and of this state expressly or

impliedly grant or allow municipalities, as fully as though this charter specifically enumerated

each of those powers." And if there was any remaining doubt, Chapter II, section 5 drives home

the point: "The charter shall be liberally construed to the end that the city may have all powers

necessary or convenient for the conduct of its municipal affairs, including all powers that cities

may assume pursuant to state laws and to the municipal home rule provisions of the state

constitution." Because the recall power is a "power which the constitution...of this state

expressly or impliedly grants or allows municipalities," the Oregon City Charter itself effectively

contains the recall power "as though...specifically enumerated" therein. Or. City Charter, Ch. II,

§4. The Legislature therefore cannot impose the 90-day limitation of Or. Rev. Stat. 249.875(1)

on Oregon City, as doing so would "amend or repeal" part of the Oregon City Charter in

contravention of the home rule amendment. Or. Const, Art. XI, § 2.

Oregon City hasn't developed its own custom regulations governing the exercise of the

recall power. Instead, Oregon City has adopted Oregon's statewide election laws by reference:

"[T]he general laws of the state shall apply to the conduct of all city elections[.]" Or. City

Charter, Ch. VI, § 26. Oregon's statewide election laws are contained in Or. Rev. Stat. Title 23

("Elections"), which contains Or. Rev. Stat. Chapters 246 to 260. The challenged statute in this case, Or. Rev. Stat. 249.875(1), falls within that range. Therefore, Oregon City has adopted Or. Rev. Stat. 249.875(1) via Or. City Charter, Ch. VI, § 26.

"A municipality is responsible for a constitutional violation, … , only when an 'action [taken] pursuant to [an] official municipal policy of some nature' caused the violation." *Castro v. Cty. of Los Angeles*, 797 F.3d 654, 670 (9th Cir. 2015) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A policy "promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies Monell's policy requirement." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds* by *Bull v. City & Cty. of San Francisco,* 595 F.3d 964 (9th Cir. 2010) (en banc).

Oregon City, without question, adopted the provisions of its own charter, so Chapter VI, section 26 qualifies as "official municipal policy." When Defendant Riggs implemented that Charter provision by imposing and enforcing the 90-day signature-gathering deadline of Or. Rev. Stat. 249.875(1), she was therefore acting according to municipal policy, not acting at the State's direction. The City of Oregon City is the real party in interest in this case, and the City is therefore liable for any nominal damages in this case.[3]

---

[3]    Because the City is the real party in interest (Defendant Riggs is the named defendant in her official capacity only), the State's argument that *she* cannot be liable for nominal damages because she was not the "final policymaker" is irrelevant. Mot. at 13. The City, the real party in interest, *did* adopt Ch. VI, § 26. Because that Charter provision is the vehicle through which Ms. Riggs enforced the 90-day limitation, it does not matter than she, personally, was not the "final policymaker."

**ii.  Plaintiffs do not seek damages against Defendant Riggs in her personal capacity, so the State's qualified immunity argument is irrelevant.**

The State spends two pages arguing that, *if* Plaintiffs had sued Defendant Riggs in her personal capacity, then she would be entitled to qualified immunity as to any nominal damages claim. Mot. at 13-14. Plaintiffs have not sued Defendant Riggs in her personal capacity, so the State's argument is irrelevant and will not be further addressed.

**5.  The Eleventh Amendment does not bar Plaintiffs' request for declaratory relief because Defendant Riggs is not a state actor.**

The State argues that the Eleventh Amendment bars Plaintiffs' request for declaratory relief because Defendant Riggs, a local official, was a state actor. Mot. at 14-15. At the same time, the State admits that sovereign immunity does not apply to local officials unless they are acting on behalf of the state. *Id.* As discussed earlier in this response, Defendant Riggs was not a state actor; rather, she was following the Oregon City Charter when she imposed and enforced the 90-day signature gathering deadline. Sovereign immunity under the Eleventh Amendment therefore does not apply.

Further, the State raises its Eleventh Amendment argument as part of its challenge to Plaintiffs' standing, which, as previously discussed, is judged as of the date of filing. Therefore, even if Defendant Riggs *was* a state actor, the Eleventh Amendment still would not apply to this case because, on the date Plaintiffs filed this case, Defendant Riggs had enforced, and was continuing to enforce, the 90-day signature gathering deadline. In other words, at that time, her conduct was not wholly past, and it constituted an ongoing violation. *See* Mot. at 14-15 (discussing *Ex parte Young* exception to immunity for ongoing violations). This defeats the State's standing-based Eleventh Amendment challenge even assuming that Defendant Riggs was a state actor.

**B. The State's request for *Pullman* abstention is inappropriately included in this motion to dismiss.**

While the State conferred with Plaintiffs' counsel regarding its anticipated motion to dismiss, the State never conferred regarding a request for *Pullman* abstention. *See* Mot. at 15-17 (discussing and requesting abstention under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman*")). This is significant for several reasons. First, if *Pullman* abstention is pursued, then a case should be stayed, not dismissed. *Columbia Basin Apt. Assoc. v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001) ("If we abstain under *Pullman*, retention of jurisdiction, and not dismissal of the action, is the proper course.") (*citing Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 841 (9th Cir. 1979) (internal quotation marks omitted). However, the State filed a motion to dismiss, not a motion for a stay.

And second, had the State conferred with Plaintiffs' counsel regarding a request for *Pullman* abstention, Plaintiffs may have been receptive to sending their state court claims to an Oregon state court for resolution, although via a different procedural mechanism (discussed in the following paragraph). Had the parties agreed on such a step, it might have obviated the State's need to file a motion to dismiss and saved the parties and the Court substantial time and resources. Because the State failed to confer regarding its request for *Pullman* abstention, the Court could, and should, deny the request. *See* LR 7-1(a)(3).

If the Court reaches the State's *Pullman* stay request, the Court should take the request under advisement pending the filing of Plaintiffs' anticipated motion for certification to the Oregon Supreme Court. That is because the State, in suggesting a *Pullman* stay, is not entirely wrong. Plaintiffs' state court claims *would* be appropriate resolved by an Oregon state court. However, *Pullman* abstention is not the appropriate procedural vehicle to achieve that result in this case. *Pullman* abstention would send the state law claims to a county-level Oregon circuit

PAGE  17 – RESPONSE TO MOTIONS TO DISMISS

court. Such a step would result in years of delay and expense before an Oregon appellate court

could answer the questions presented in this case under the Oregon Constitution. Had the State

conferred about its planned request for *Pullman* abstention, Plaintiffs would have suggested the

alternative of jointly moving to certify the state law questions directly to the Oregon Supreme

Court. Indeed, Plaintiffs intend to confer with the State regarding such a motion, and to file one,

whether joint or otherwise.[4]

As will be made clear in Plaintiffs' motion, certification to the Oregon Supreme Court is

more appropriate than a *Pullman* stay. Direct certification to the Oregon Supreme Court, if

accepted, would avoid the potentially years of delay and expense that would come with a

*Pullman* stay. Further, the Oregon Supreme Court is best qualified to answer the purely legal

question of whether Or. Rev. Stat. 249.875(1) is inconsistent with Article II, section 18 of the

Oregon Constitution. No county circuit court can definitively answer that question. For those

reasons, if the Court reaches the State's request for a *Pullman* stay, it should wait to weigh that

---

[4]       *See* LR 83-14 (Certifying a Question to the Oregon Supreme Court). In deciding whether
to certify a question to the Oregon Supreme Court, Oregon district courts are guided by the
certification criteria set forth in *Western Helicopter Services, Inc., v. Rogerson Aircraft
Corporation,* 311 Or. 361, 811 P.2d 627 (1991). LR 83-14(a). Those criteria include:

1. Whether controlling precedent exists. If the Oregon Supreme Court determines that
   controlling Oregon precedent exists for the question certified, "that factor will argue
   heavily *against* accepting certification." *Western Helicopter Services,* 311 Or at 366
   (emphasis added);
2. *Pullman* abstention favors certification. If the case involves application of the *Pullman*
   abstention doctrine the Oregon Supreme Court generally *will* accept certification.
   However, if *Pullman* abstention would not be the likely alternative, the court generally
   sees no need to accept certification. *Id.* at 368–369;
3. Importance of question. *Id.* at 369;
4. Contested issue. The Oregon Supreme Court also considers whether the question certified
   "appear[s] truly to be contested." *Id.* at 370; and
5. Procedural posture of case. The Oregon Supreme Court prefers that certified questions
   present "well defined" and "focused" issues, which necessarily means that the district
   court proceedings have progressed to the point where those issues are clear. *Id.*

option against the alternative option of certification to the Oregon Supreme Court. Plaintiffs will present that option via separate motion; this briefing in response to the State's motion to dismiss is not the proper venue to explore those alternatives.

### C. Plaintiffs' allegation that the 90-day signature gathering limitation unduly burdens core political speech under the 1st and 14th Amendments is viable.

The State next argues that, even if Plaintiffs have standing, "the Court should grant the motion to dismiss Count 1 of Plaintiff's Complaint, because the Oregon Constitution's recall deadline does not violate the First Amendment as a matter of law." Mot. at 17. However, the *Oregon Constitution* does not contain a "recall deadline;" it is a state statute, Or. Rev. Stat. 249.875(1), that contains the 90-day signature gathering deadline. Also, the State does not mention Count Two. *Id.* It initially appears, therefore, that the State is only targeting Count One of Plaintiffs' Second Claim for Relief. FAC at 14 (Count One is facial challenge under the 1st and 14th Amendments; Count Two is an as-applied challenge). However, confusingly, on page 22 of its motion, the State seems to address the as-applied challenge in addition to the facial challenge. Whatever the true scope of the State's challenge, the Court should deny the motion to dismiss because Plaintiffs' have adequately alleged viable federal claims. Further, Plaintiffs should be allowed to argue the merits of those claims in their own motion for summary judgment, not in the space-constrained context of responding to the State's multifaceted motion to dismiss.

This case remains at the pleading stage. Procedurally, Plaintiffs are responding to the State's motion to dismiss. To survive a motion to dismiss, the claim must be "plausible on its face." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017). A motion to dismiss should only be granted if either a cognizable legal theory is absent or if the facts alleged fail to

suffice under a cognizable claim. *Id.* A motion to dismiss is not an appropriate replacement for a

motion for summary judgment. *See Olsen*, 363 F.3d at 921-922.

As a preliminary matter, for several reasons the Court should defer a decision on the

merits of Plaintiffs' 1st and 14th Amendment claims. First, as discussed earlier in this response,

it appears likely that this case will be stayed either due to certification of state law questions to

the Oregon Supreme Court or, as the State has suggested, due to *Pullman* abstention. Certainly it

appears the parties agree that one of those two options is appropriate. And, as previously

discussed, resolution of the state law questions by an Oregon state court may obviate the need for

any court to reach Plaintiffs' federal claims. *Sterling v. Cupp*, 290 Or. 611, 625 P.2d 123, 126

(1981) ("The proper sequence is to analyze the state's law, including its constitutional law,

before reaching a federal constitutional claim. This is required, not for the sake either of

parochialism or of style, but because the state does not deny any right claimed under the federal

Constitution when the claim before the court in fact is fully met by state law."). This will be

discussed more fully in Plaintiffs' anticipated motion for certification to the Oregon Supreme

Court.

The Court should defer a decision on the merits of Plaintiffs' 1st and 14th Amendment

claims for a second reason: fairness. The State's motion to dismiss is 29 pages long, but it spends

only five of those pages arguing that the U.S. Constitution does not limit recall petition

deadlines. *See* Mot. at 17-22. It will take Plaintiffs many more pages than they have available in

this brief to fully set forth their position in response. *See* LR 7-2(b)(1) (limiting this response to

35 pages). That is because: (1) Plaintiffs have been forced to spend most of their briefing space

responding to the State's standing arguments; (2) Plaintiffs carry the burden to prove their 1st

and 14th Amendment claims; and (3) the caselaw is not nearly as clear-cut as the State makes it

appear to be. It will take substantial briefing space for Plaintiffs to set forth the nuanced contours

of the existing caselaw, and where there are unanswered questions and holes that this Court

should fill. Indeed, the majority of the State's motion to dismiss is spent challenging Plaintiffs'

standing (*see* Mot. at i (table of contents)), and Plaintiffs have responded accordingly. It is not

fair to force Plaintiffs to prove their case on the merits in the confined space of a few pages, in a

response brief, especially when they get no reply brief. A decision on the merits of the 1st and

14th Amendment claims, therefore, should be postponed until, at the earliest, cross-motions for

summary judgment. Plaintiffs should have the opportunity to fully explicate their claims.

For the above reasons, the Court should defer a decision on the merits of Plaintiffs' 1st

and 14th Amendment claims. By confining its decision on the State's motion to dismiss to

determining whether or not Plaintiffs have alleged sufficient facts to support their standing

(which is the issue most addressed in the State's motion), the Court will answer an important

question that needs to be resolved regardless of the court, state or federal, in which this case

moves forward.

**1.    The First Amendment applies to ballot petition deadlines because they make it
   less likely that proponents can obtain the necessary signatures to place issues on
   the ballot.**

In an abundance of caution, Plaintiffs briefly respond to the State's arguments on the

merits. The State is wrong when it asserts that "the [recall] petition deadline does not regulate

speech at all." Mot. at 17.

Circulating petitions to qualify for the ballot constitutes core political speech protected

under the First Amendment. *See Meyer v. Grant*, 486 U.S. 414, 425 (1988); *Angle v. Miller*, 673

F3d 1122, 1132 (9th Cir. 2012). Therefore, regulations imposing severe burdens on petition

circulators must be narrowly tailored and advance a compelling state interest. *Angle*, 673 F3d at

1132. There are at least two ways in which restrictions on the petition process can severely burden core political speech. *Id.* First, regulations can restrict one-on-one communication between petition circulators and voters. *Id.* Second, regulations can make it less likely that proponents will be able to garner the signatures necessary to qualify for the ballot, thus limiting their ability to make the petition's subject matter the focus of district-wide discussion. *See id.* The 90-day limit of Or. Rev. Stat. 249.875(1) falls within the latter category.

While there is no First Amendment right to qualify a petition for the ballot, regulations that make it more *difficult* to qualify for the ballot indirectly impact core political speech by reducing the total quantum of speech on a public issue. *Angle*, 673 F3d at 1133. Thus, as applied to petitions, courts assume that ballot access restrictions place a severe burden on core political speech, and trigger strict scrutiny, when they significantly inhibit the ability of petition proponents to qualify for the ballot. *Id.*

The 90-day limitation of Or. Rev. Stat. 249.875(1) is subject to strict scrutiny under that test. As explained in the complaint, FAC at 2, the Oregon Constitution contains no time limit for gathering recall petition signatures, except for the implicit requirement that signatures may only be gathered during the targeted elected official's term of office. *See* Or. Const., Art. II, § 18(7). So under section 18, a recall petition may be circulated for nearly four years. But under Or. Rev. Stat. 249.875(1), a recall petition may be circulated for only 90 days. By definition, therefore, the 90-day limit on signature gathering makes it significantly less likely that recall proponents will be able to garner the signatures necessary to qualify for the ballot, thus triggering strict scrutiny under *Angle*. 673 F.3d at 1133. The factual allegation of the complaint also support such a finding. *See, e.g.,* FAC at 8 (alleging that 90-day deadline caused Plaintiffs more expense and

difficulty than would otherwise exist); *id.* at Ex. 4, pp. 1-3 (detailing the creative and unusual methods used by Plaintiffs because of the 90-day deadline and the COVID-19 pandemic).

The statute cannot withstand strict scrutiny. As explained below in the section addressing Plaintiffs' claims under the Oregon Constitution, the 90-day limitation is not narrowly tailored to advance a compelling state interest. It is therefore facially void as infringing on core political First Amendment rights.

Other district courts in the Ninth Circuit, including an Oregon district court, have interpreted *Angle* consistently with Plaintiffs' reading. Judge McShane, in *People Not Politicians Oregon v. Clarno*, No. 6:20-cv-01053-MC (D. Oregon 2020), applied the *Angle* framework and found that, at least during the COVID-19 crisis, the challenged deadline and signature threshold violated the First Amendment. *See id.*, Opinion and Order (July 13, 2020), *stayed pending appeal*, 141 S. Ct. 206 (2020). In so holding, the court relied on the fact that the campaign had acted with reasonable diligence in pursuing signature gathering, such that they would have qualified for the ballot but-for the COVID-19 emergency. *Id.* at *9-10. In fashioning appropriate relief, the court reduced the minimum signature threshold by more than 50% *and allowed the petitioners an additional six weeks to obtain sufficient signatures*, all based on the First Amendment. *Id.* at *13-14.

Other Ninth Circuit district courts that have similarly applied *Angle* include: *Reclaim Idaho*, 2020 WL 3490216, at *7, and *Fair Maps Nevada v. Cegavske*, No. 3:20-cv-00271-MMD-WGC, 2020 WL 2798018, at *11 (D. Nev. May 29, 2020). These cases, like *People Not Politicians*, were initiative cases, not recall cases, but there is no reason that the *Angle* standard should not apply as equally to recall petitions as it does to initiative petitions; they all trigger the First Amendment petition circulation rights under *Meyer.* And, after all, initiative petitions and

recall petitions share the goal of gathering enough signatures to trigger a special election. No Supreme Court or Ninth Circuit precedent says otherwise.

> **2.    The State's attempt to litigate the factual reasonableness of the 90-day deadline is inappropriate in the motion to dismiss context.**

It has been stated many times above, but a reminder is once again necessary: this case is at the motion to dismiss stage. The State's arguments should be confined to the pleadings and the law. It is inappropriate to introduce new evidence at this stage. And yet the State once again attempts to introduce evidence, mostly related to the supposed "reasonableness" of the 90-day deadline, as well as COVID-19 data, in an attempt to disprove Plaintiffs' First Amendment claims. Mot. at 20-24; *see, e.g., id.* at 20 ("If this case proceeded to discovery, the evidence would show..."); *id.* at 21 (suggesting that the evidence would show good public policy reasons for the 90-day limitation); *id.* at 23 ("[T]he pandemic has subsided since Plaintiffs circulated their petition[] to recall Mayor Holladay."). The Court should ignore the State's proffered evidence and related arguments, which are appropriate only in later stages of the case. At the motion to dismiss stage Plaintiffs are not required to, and will not, respond to the State's evidence and arguments based thereon.

> **D.  Plaintiffs' state law claims should not be dismissed.**

The State next argues that Plaintiffs' state law claims should be dismissed, either on jurisdictional grounds or because Plaintiffs' state law claims fail as a matter of law. Mot. at 24-26. Those arguments lack merit.

1.  **This Court has jurisdiction over the state law claims.**

    a.  *Pennhurst* **does not apply.**

The Eleventh Amendment, as interpreted in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ("*Pennhurst*"), the State says, bars this Court from hearing Plaintiffs' challenges under the Oregon Constitution. Mot. at 24-25. That is incorrect. As the State appears to acknowledge, *Pennhurst* only applies to state actors. Mot. at 24. While a local government official *can* be a state actor, depending on the circumstances, as explained above in this response, Defendant Riggs was not a state actor under the Eleventh Amendment when she imposed and enforced the 90-day limitation. Rather, she was acting pursuant to the local Oregon City Charter. For the same reason, and contrary to the State's assertion, the State of Oregon is not the "real party in interest" in this case. Mot. at 25. Again, as explained in a previous section, the City of Oregon City is the real party in interest.

To drive home the point that the State is not the "real party in interest" under *Pennhurst*, consider that a judgment of this Court in this case would not directly impact the State, nor bind the State in either future state court litigation or future district court litigation. Here, the State is merely a proposed intervenor, participating not because Plaintiffs named it as a defendant (they didn't), but by its own election. A state officer's actions are not challenged here, and a judgment will have no legal effect on the State or its operations. In summary, the State has failed to explain how, or why, it is the "real, substantial party in interest" such that *Pennhurst* applies. It does not.

    b.  **The Court should retain supplemental jurisdiction over the state law claims.**

The State does not dispute that the Court has supplemental jurisdiction over Plaintiffs' state law claims. Mot. at 25. Rather, it argues that the Court should exercise its discretion to decline supplemental jurisdiction. *Id.* Plaintiffs disagree.

First, the State argues that *if* the Court dismisses all of Plaintiffs' federal law claims, then it should decline jurisdiction over Plaintiffs' state law claims. *Id.* Plaintiffs have no problem with that argument. However, as explained above in this response, there is no basis for the Court to dismiss all of Plaintiffs' federal law claims. There is therefore no basis to also dismiss Plaintiffs' state law claims under the guise of lack of jurisdiction.

Second, the State urges the Court to dismiss Plaintiffs' state law claims because those claims "raise[] novel or complex issue[s] of State law[.]" Mot. at 26. But this argument is addressed above in Plaintiffs' response to the State's *Pullman* abstention request, and the answer is the same here as it is there: the procedurally proper step in dealing with novel issues of state law is not to *dismiss* the claims, but rather to certify the issue to the Oregon Supreme Court for resolution or, in the alternative, to stay the district court action pending resolution of a separate state court case. The Court should therefore reject the State's dismissal request based on jurisdictional arguments.

### 2. Plaintiffs raise meritorious, unresolved questions of Oregon constitutional law.

The State's final argument, to which it devotes *less than three pages*, is that Plaintiffs' state law claims fail on the merits. Mot. at 26-28. Half of that argument is devoted to a non-binding Nevada case. *Id.* at 27-28. Thus the State's argument, by all appearances, does not seem to represent a serious effort to defeat Plaintiffs' state law claims. This makes sense, as the parties appear to agree that an Oregon state court is better-positioned to resolve the novel questions of state constitutional law raised by Plaintiffs' state law claims. Still, Plaintiffs will briefly address

those claims here, while reserving their right to fully support, prove, and explicate them at a later time.[5]

The 90-day signature gathering time limit of Or. Rev. Stat. 249.875(1) unconstitutionally burdens the recall right of Article II, section 18 of the Oregon Constitution (APP at 2). While the constitutionality of the statutory 90-day signature gathering limitation has never been addressed by an Oregon appellate court, the issue has been raised in a formal opinion of the Oregon Attorney General, wherein Representative and Majority Leader Ed Lindquist presented the following question: "Is the provision of [Or. Rev. Stat. 249.875(1)], which renders void recall petitions which are not filed on or before the 90th day after filing of the original registration petition provided for in [Or. Rev. Stat. 249.875], unconstitutional under Oregon Constitution, Article II, § 18?" 37 Op. Atty Gen. Ore. 1399 (1976). In a superficial opinion filled with bluster, Attorney General Lee Johnson answered "No," *id.,* reasoning that subsection 18(8) provides the Legislature with authority to impose the 90-day limitation:

> "There is no question that the Oregon legislature may constitutionally enact laws which procedurally define and help to implement the people's constitutional powers of recall, initiative, and referendum. Article II, § 18, of the Oregon Constitution, as noted, expressly mandates that 'such additional legislation as may aid the operation of this [recall] section shall be provided by the legislative assembly . . .', and the ability of the legislature to enact reasonable procedures by which voters may exercise their powers of recall, initiative, and referendum cannot be seriously challenged.
>
> ....

---

[5]    As discussed elsewhere in this brief, there is not enough space here for Plaintiffs to fully brief their claims on the merits. Nor should they be required to do so. Rather, the Court should confine its decision on the State's motion to dismiss to a determination regarding whether Plaintiffs have adequately alleged their standing. The standing issue is the only one that is properly before the Court at this time.

"Specifically, the provision in [Or. Rev. Stat. 249.875(1)] that recall petitions shall be void unless completed and filed within 90 days of the original filing is an unquestionably constitutional requirement."

37 Op. Atty Gen. Ore. at 1400-1401. That advice was wrong.

The main failing of the 1976 Johnson opinion is that it completely ignored the 1914 *Harris* decision, 74 Or 573, which should have controlled the analysis. In *Harris*, decided six years after the recall power was added to the Oregon Constitution, the Court was called upon to decide whether the recall power of Article II, section 18 is self-executing, or whether it instead requires implementing legislation. *Id.* at 575-76. The Court did not mince words in finding the recall power to be entirely self-executing:

> "[Article II, section 18] subjects every state, district, county, and municipal officer to what has been designated as the 'Imperial Recall.' It provides a special remedy to oust from public office a corrupt, incompetent, unfaithful, or unpopular public servant.

> [....]

>> "'Such additional legislation *as may aid the operation of this section* shall be provided by the legislative assembly, including provision for payment by the public treasury of the reasonable special election campaign expenses of such officer.'

> "This clause requires the legislative assembly to pass such legislation 'as may *aid* the operation' of said section. This does not mean legislation to put said section in operation, but such as will *aid* its operation. It seems to imply that the section will be in operation before such legislation shall be enacted. 'To aid' signifies 'to support, help, or assist.'

>> "This section does not confer *power* upon the legislative assembly to provide for the recalling of officers. It is not a mere declaration of principles to be made operative by the legislative assembly. It provides that *'every public officer, is subject as herein provided, to recall.'* Every officer is made, by this section, subject to recall as provided therein and not as the lawmaking department may provide.

> [....]

>> "[Article II, section 18] sets forth a complete modus operandi for the recall. Nothing whatever is omitted that is necessary to effect the recall. Its provisions are absolute, not conditional. Its terms indicate an intention that it shall

be operative as soon as it shall be adopted by the people. *There is nothing to be done by the Legislature to put it in operation.* It is clear from the terms of this section that its framers and the electors who adopted it did not intend that it should be *in abeyance* until the lawmaking power should pass some act in its aid. If they had intended to confer *power* on the Legislature to provide for a recall of public officers, they could have done so in a few words, and it would not have been necessary to use 500 words in conferring this power. It is evident from the wording of this section that its framers and the electors who adopted it desired to make it effective immediately. To make it dependent on the action of the Legislature would have been to make it subject to be defeated by the inaction of an unfriendly or negligent Legislature.

[....]

"[Subsection 18(8),] which provides that such additional legislation as may aid in the operation of this section shall be provided by the legislative assembly, including a provision for payment, by the public treasury, of the reasonable special election campaign expenses of such an officer, is a direction to the Legislature to pass such act as may aid in the operation of said section, but the right to have an officer recalled, in accordance with the provisions of such sections, is not made *dependent* on the passage of such an act. It is the duty of the legislative assembly to pass such an act, but the right to recall an officer cannot be suspended or defeated by the failure of the Legislature to do its duty in the premises. There is nothing in said section indicating an intention that the right of recall should be *dependent* upon the action or will of the Legislature. The people adopted this section to enable them to have a remedy against corrupt, inefficient, unfaithful or unpopular public officers. The section provides a complete code for a recall of officers, and, according to the obvious meaning of the language used, the right was to be effective *as soon as said section took effect.*"

"It is hardly necessary for us to say that we have nothing to do with the *wisdom* of the provision for the recall. Obviously, it can be abused."

*Harris*, 74 Or at 579-85 (emphasis in original). The above-quoted portions of *Harris* completely

undermine the 1976 Johnson opinion.

The Johnson opinion fails to recognize that the Legislature is powerless to curtail the

recall right, which springs, fully formed, from section 18 itself. That point was repeatedly

explained by the *Harris* court: "Every officer is made, by [section 18], subject to recall as

provided therein and not as the lawmaking department may provide. ... [Section 18] sets forth a

complete modus operandi for the recall. ... *Its provisions are absolute, not conditional*. ... There

is nothing in [section 18] indicating an intention that the right of recall should be dependent upon the action or will of the Legislature." 74 Or at 580-81, 584 (emphasis added). Equally clear is that the Legislature's only function in the recall context is to enact legislation that will "aid" section 18. *Id.* at 580.

The *Harris* court explained that "'To aid' signifies 'to support, help, or assist.'" *Id.* So, the question is, does the 90-day signature gathering limitation contained in Or. Rev. Stat. 249.875(1) "support, help, or assist" the operation of Article II, section 18? No, it doesn't. Logic demands that to "support, help, or assist" the operation of section 18, a recall-related statute must, first, serve at least one provision of section 18 and, second, it must not unduly burden any other provision. The 90-day signature gathering limitation of Or. Rev. Stat. 249.875(1) fails that test on both counts.

First, the 90-day limitation does not serve any provision of section 18. Most obviously, nowhere does section 18 permit the imposition of a signature gathering deadline. Neither does it serve any of the other provisions of section 18, listed as follows:

1. The maximum 15% signature threshold of § 18(2);
2. The petition content requirement of § 18(3);
3. The resignation and special election provisions of § 18(4);
4. The 200-word and vacancy provisions of § 18(5);
5. The procedural requirements of § 18(6); and
6. The expense reimbursement provision of § 18(7).

Because it doesn't serve any provision of section 18, the statutory 90-day signature gathering limitation is void.

Aggravating the problem, the 90-day limitation unduly burdens several provisions of section 18. Because the recall power is a fundamental constitutional right, strict scrutiny applies. Analyzed under strict scrutiny, a statute unduly burdens a constitutional right unless the statute is justified by a compelling state interest and the statute is narrowly tailored to achieve that interest.

Here, the 90-day limitation is not justified by a compelling state interest and, in any event, it is not narrowly tailored.

The burden on the core recall power of subsection 18(1) is of primary concern. That subsections reads: "Every public officer in Oregon is subject, as herein provided, to recall by the electors of the state or of the electoral district from which the public officer is elected." The statutory 90-day limitation burdens that right because it compresses the time within which a recall petitioner can gather signatures to trigger a recall election, making it more difficult to exercise the right conferred by subsection 18(1). The state has no compelling interest in this draconian limitation.

The *only* interest served by the 90-day limitation is to curtail the recall right. Even Attorney General Johnson admitted as much in his 1976 defense of the time limit:

> "The abuse that [the 90-day limitation] was designed to prevent was feared soon after passage of Article II, § 18. The substance of that fear is related in J.D. Barnett, <u>Operation of Initiative, Referendum, and Recall in Oregon</u>, p. 211 (1915):
>
> "'It is possible that a recall petition, based upon good grounds or not, may be circulated, and then when completed or nearly completed, be put in 'cold storage' to await a more convenient opportunity for a sudden assault upon the officer involved. And, whether or not the petition were originally circulated with this end in view, there are cases in which the uncertainty of the officer's position has been thus continued for a considerable period of time. 'A plan of securing petitions and holding them indefinitely, to be filed at the whim of a few wire pullers, is absurd. Such a program could be employed to bully and control officials. No little group of men should be permitted to hold such petitions in their hands, to be used as a means of influencing affairs at the city hall. No more dangerous program could be introduced into municipal or other government. Recall petitions should be filed and an election be brought when sufficient names are secured, or they should be destroyed. [...]' (Quoting from <u>Oregon Journal</u>, May 10, 1914, § 2, p4, col 1)."

 37 Op. Atty Gen. Ore. at 1402. But curtailing the recall right simply because the Legislative Assembly doesn't like its constitutional scope is not a compelling reason. There is no evidence (at least, none that is currently before the Court, and none that Plaintiffs' counsel is aware of)

that, in the 25 years before the 90-day limit was adopted, there were ever any completed or near-completed recall petitions kept in "cold storage" for later use. And even if such abuse occurred, it wouldn't justify the direct curtailment of the recall right. As the *Harris* court observed of the recall power in 1914: "Obviously, it can be abused." 74 Or at 585. Much like the First Amendment freedom of speech, the potential for abuse of the recall right is not a compelling reason to burden the right itself.

Even if preventing completed or near-completed recall petitions from being put in "cold storage" reflected a compelling state interest, the 90-day limit is not narrowly tailored to achieve that purpose. Instead, because of its overbreadth, the 90-day limit has created the opposite of the cold storage problem, the *spoilage* problem, which occurs when recall petitioners, despite actively pursuing signatures, fail to obtain sufficient signatures within 90 days. When that happens, which is frequently, the recall petitioners' efforts are wasted, and the signatures gathered count for nothing. It is an inflexible rule; even if the recall campaign only needs one more day, or one more signature, the 90-day limitation operates to preclude a recall election that is otherwise available under Article II, section 18.

There are ways to address the hypothetical cold storage problem without creating the very real spoilage problem. For example, instead of imposing a one-size-fits-all 90-day deadline, legislation could be crafted requiring recall petitioners to actively pursue signatures until they meet the minimum signature threshold, at which time they must immediately submit their signatures for verification. To monitor their progress, recall petitioners could be required to submit monthly sworn status reports regarding their signature-gathering efforts. Such a scheme would ensure that recall petitioners are not sitting on their rights, would avoid the spoilage problem inherent in the 90-day deadline and, critically, would not unduly burden the recall right.

In essence, this arrangement would represent a codification of the laches doctrine, specifically applied to the recall right. *See also* 37 Op. Atty Gen. Ore. at 1403 (citing *Cloud v. Dyess*, 172 So 2d 528 (La., 1965): "a recall petition is deemed abandoned by laches when the recall petitioners do not actively pursue their remedy[.]").

For the reasons explained above, the 90-day signature gathering limitation of Or. Rev. Stat. 249.875(1) unduly burdens the recall right of Article II, section 18, and is therefore void.

## CONCLUSION

The Court should deny the State's motion to dismiss because Plaintiffs have adequately alleged their standing and the State's arguments going to merits of Plaintiffs' claims are insufficiently developed and, in any event, are inappropriately presented in this motion to dismiss. The Court should therefore decline, at this stage, to reach the State's arguments regarding whether Plaintiffs' claims are legally viable. But if the Court reaches those arguments on the merits, Plaintiffs have adequately alleged viable federal and state constitutional claims.

If the Court finds that any of the allegations of the complaint are currently insufficient, the Court should allow Plaintiffs to re-plead. Dismissal without leave to amend is improper unless it is clear that the complaint cannot be saved by any amendment. *See County of Tulare*, 666 F.3d at 636.

And finally, while this Court has jurisdiction over all of Plaintiffs' claims, it appears the parties agree that a referral of the novel state constitution questions to an Oregon state court may be in order. Plaintiffs anticipate filing a motion to certify to the Oregon Supreme Court, which is the proper procedural step to take in these circumstances. The federal claims would be held in abeyance during the time the Oregon Supreme Court considers the certified questions of state law.

RESPECTFULLY SUBMITTED this 20th day of May 2021.


                                        *s/ Jesse A. Buss*
                                        Jesse A. Buss, OSB # 122919
                                        WILLAMETTE LAW GROUP
                                        411 5th St.
                                        Oregon City OR 97045
                                        Tel: 503-656-4884
                                        Fax: 503-608-4100
                                        Email: jesse@WLGpnw.com

                                        *Attorney for Plaintiffs Committee to Recall*
                                        *Dan Holladay, Jeana Gonzales, and Adam*
                                        *Marl*

## CERTIFICATE OF SERVICE

I certify that on May 20, 2021, I served the foregoing document upon the parties hereto by the method indicated below, and addressed to the following:

Kevin S. Mapes
Bateman Seidel Miner Blomgren Chellis & Gram, PC
1000 SW Broadway, Ste. 1910
Portland OR 97205
kmapes@batemanseidel.com
   *Of Attorneys for Defendant Kattie Riggs*

Brian Simmonds Marshall, OSB # 196129
Shaunee Morgan, OSB # 194256
Oregon Department of Justice
100 SW Market Street
Portland OR 97201
Brian.S.Marshall@doj.state.or.us
Shaunee.Morgan@doj.state.or.us
   *Of Attorneys for Proposed-Intervenor State of Oregon*

by electronically transmitting the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*s/ Jesse A. Buss*
Jesse A. Buss, OSB No. 122919
Attorney for Plaintiffs

**Or. Rev. Stat. 249.875(1) (Time for Completing Filing)**

"A recall petition shall be void unless completed and filed not later than the 100th day after filing the prospective petition described in ORS 249.865. Not later than the 90th day after filing the prospective petition the petition shall be submitted to the filing officer who shall verify the signatures not later than the 10th day after the submission. The filed petition shall contain only original signatures. A recall petition shall not be accepted for signature verification if it contains less than 100 percent of the required number of signatures. The petition shall not be accepted for filing until 100 percent of the required number of signatures of electors have been verified."

## The Recall Right - Or. Const, Art. II, § 18

Adopted via initiative in 1908, Oregon's recall right is contained in Article II, section 18 of the Oregon Constitution, which states in full as follows:

### Section 18. Recall; meaning of words "the legislative assembly shall provide."

(1) Every public officer in Oregon is subject, as herein provided, to recall by the electors of the state or of the electoral district from which the public officer is elected.

(2) Fifteen per cent, but not more, of the number of electors who voted for Governor in the officer's electoral district at the most recent election at which a candidate for Governor was elected to a full term, may be required to file their petition demanding the officer's recall by the people.

(3) They shall set forth in the petition the reasons for the demand.

(4) If the public officer offers to resign, the resignation shall be accepted and take effect on the day it is offered, and the vacancy shall be filled as may be provided by law. If the public officer does not resign within five days after the petition is filed, a special election shall be ordered to be held within 35 days in the electoral district to determine whether the people will recall the officer.

(5) On the ballot at the election shall be printed in not more than 200 words the reasons for demanding the recall of the officer as set forth in the recall petition, and, in not more than 200 words, the officer's justification of the officer's course in office. The officer shall continue to perform the duties of office until the result of the special election is officially declared. If an officer is recalled from any public office the vacancy shall be filled immediately in the manner provided by law for filling a vacancy in that office arising from any other cause.

(6) The recall petition shall be filed with the officer with whom a petition for nomination to such office should be filed, and the same officer shall order the special election when it is required. No such petition shall be circulated against any officer until the officer has actually held the office six months, save and except that it may be filed against a senator or representative in the legislative assembly at any time after five days from the beginning of the first session after the election of the senator or representative.

(7) After one such petition and special election, no further recall petition shall be filed against the same officer during the term for which the officer was elected unless such further petitioners first pay into the public treasury which has paid such special election expenses, the whole amount of its expenses for the preceding special election.

(8) Such additional legislation as may aid the operation of this section shall be provided by the legislative assembly, including provision for payment by the public treasury of the reasonable special election campaign expenses of such officer. But the words, "the legislative assembly shall provide," or any similar or equivalent words in this constitution or any amendment thereto, shall not be construed to grant to the legislative assembly any exclusive power of lawmaking nor in any way to limit the initiative and referendum powers reserved by the people.