JESSE A. BUSS, OSB # 122919
WILLAMETTE LAW GROUP
411 Fifth Street
Oregon City OR 97045-2224
Tel: 503-656-4884
Fax: 503-608-4100
Email: jesse@WLGpnw.com

Attorney for Plaintiffs
COMMITTEE TO RECALL DAN HOLLADAY,
JEANA GONZALES, and ADAM MARL

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COMMITTEE TO RECALL DAN HOLLADAY, JEANA GONZALES,** and **ADAM MARL,**<br><br>　　　　　Plaintiffs,<br><br>　　　　　vs.<br><br>**KATTIE RIGGS**, City Recorder for Oregon City, in her official capacity,<br><br>　　　　　Defendant. | Case No. 3:20-cv-01631-YY<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM** |

## INTRODUCTION

The Court ordered supplemental briefing in relation to intervenor State of Oregon's and defendant Riggs's pending motions to dismiss. ECF 32. Specifically, the Court instructed plaintiffs to further brief the following two issues:

1. "[T]he court directs plaintiffs to submit supplemental briefing on how they would amend [the complaint] to allege cognizable injuries-in-fact." ECF 32 at 2.

2. "[T]he court also orders supplemental briefing on this specific issue: whether the dispute in the above-captioned matter, as either a facial challenge or an as-applied challenge, is capable of repetition, yet evading review." *Id.* at 3.

The parties submitted a joint proposed supplemental briefing schedule, ECF 34, which the Court adopted. ECF 35. Plaintiffs now respond to the Court's specific inquiries.

## ARGUMENT

**I.      If given a chance to amend their complaint, plaintiffs could successfully allege cognizable injuries.**

In its order seeking supplemental briefing, the Court states that the motions to dismiss "present some merit for the argument that plaintiffs' Amended Complaint fails to establish an injury-in-fact upon which this court can confer standing." ECF 32 at 1. The Court explains as follows:

> "The past injury plaintiffs allege—that defendant's actions made signature collection efforts 'more expensive, more difficult, and more likely to fail than it would have been had it not been burdened'—are abstract and unsubstantiated. Am. Compl. ¶ 28, ECF 19. For example, plaintiffs suggest that additional money was spent, but do not plead any specific expenditures. *Id.* While the court must construe all well-pleaded material facts in the light most favorable to the non-moving party, it cannot find an injury-in-fact from this alleged injury without further specification."

PAGE  1 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

ECF 32 at 1. Despite these pleading deficiencies, the Court "believes that if given a chance to amend their complaint, plaintiffs could successfully allege cognizable injuries. […] Thus, the court directs plaintiffs to submit supplemental briefing on how they would amend [the complaint] to allege cognizable injuries-in-fact." *Id.* at 2.

While plaintiffs believe that the allegations of the currently operative complaint are sufficient to defeat the motions to dismiss, plaintiffs appreciate the opportunity to present the Court with a proposed amended complaint that contains additional and more specific injury-related allegations. The proposed amended complaint is attached to this memorandum as Exhibit 1, with the proposed amendments/additions shown using the Track Changes function in Microsoft Word. *See* Ex. 1. Assuming the Court agrees that the allegations contained in the proposed amended complaint are sufficient to survive the motions to dismiss, plaintiffs request permission to file Exhibit 1 as the new operative complaint.

In the proposed amended complaint, plaintiffs have added the following material and specific allegations:

1. "At the local level (i.e. Oregon City), Ms. Gonzales intends to file another recall petition in 2022, or as soon as this litigation is concluded.[1] At the county level, Ms. Gonzales intends to participate in the recall campaigns against Clackamas County Commissioner Mark Shull and Clackamas County Chair Tootie Smith, both of which are in the planning stages.[2]" Ex. 1, ¶ 10.

---

[1] "Ms. Gonzales prefers not to publicly identify the specific local elected official that will be the subject of the recall petition. However, she has privately identified a specific local elected official."

[2] "With regard to the effort to recall Commissioner Shull, a formal recall petition will be filed in the summer of 2022, and Ms. Gonzales will participate either as a chief petitioner, a volunteer signature gatherer, or both. She will also, of course, sign the recall petition as an elector of Clackamas County. (Note: Summer is regarded as the best time of year to file a recall petition. More people congregate outside during the summer than in the winter, spring, or fall, and signature gathering at large outdoor events is typically a successful tactic. Door-to-door canvassing is also more successful in the summer. In the era of COVID-19, it is even less advisable to file a recall petition during cold weather.)

PAGE 2 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

2. "In both his personal and professional capacities, Mr. Marl intends to participate in future recall petition campaigns in Oregon at the local, county, regional, and state levels, including one in 2022 (and likely 2023).[3]" Ex. 1, ¶ 11.

3. The newly-added paragraphs 29 through 39 include substantial additional detail with regard to the financial and other impacts of Ms. Riggs' imposition of the 90-day signature gathering deadline. *See* Ex. 1. Of particular note is the specific allegation that, as a result of the 90-day deadline, plaintiffs were required to incur $8,000 to hire Gateway Communications, Inc. (a print and mail house), which they would not have done but-for the 90-day deadline. Ex. 1, ¶¶ 29-34. The same is true of the $900 incurred by plaintiffs to pay the United States Postal Service for business reply mail services. *Id.* at ¶ 36.

Plaintiffs respectfully submit that the above-described proposed specific allegations are more than sufficient to demonstrate injury-in-fact. These new allegations not only address the Court's concern that plaintiffs did not previously allege "specific expenditures," ECF 32 at 1, but they also demonstrate that Ms. Gonzales and Mr. Marl have specific plans in 2022 to participate in several planned recall petition campaigns and will therefore once again be subject to the 90-day signature gathering deadline contained in ORS 249.875(1). These specific allegations show much more than a "generalized desire to participate in some future recall campaign." Order, ECF 32. Indeed, these proposed amendments allege concrete, non-speculative, and actual harm.

---

"The filing date for the formal recall petition against Chair Smith is not yet set but is anticipated for the summer of 2023. Ms. Gonzales will participate in that recall effort either as a chief petitioner, a volunteer signature gatherer, or both. She will also sign the recall petition as an elector of Clackamas County."

[3]    "Mr. Marl is currently serving as an elected official in Oregon City. In that capacity, he needs to preserve his ability to work with other elected officials (especially at the Oregon City and Clackamas County levels). Accordingly, Mr. Marl declines at this time to identify with specificity which elected official(s) he intends to work to recall, and at which level(s) of government.

"Mr. Marl's participation in a 2022 Oregon recall effort will be in his professional capacity (i.e. as campaign manager), his personal capacity (i.e. as a volunteer signature gatherer), or both. He will also sign the recall petition as a qualified elector of the applicable jurisdiction. Unlike Ms. Gonzales, he is unlikely to serve as a chief petitioner in an Oregon recall in 2022 or 2023."

PAGE 3 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

**II.     This dispute is capable of repetition yet evading review.**

The Court also ordered supplemental briefing on "whether the dispute in the above captioned matter, as either a facial challenge or an as-applied challenge, is capable of repetition, yet evading review." ECF 32 at 3. The answer to that question is yes. As discussed below, even if plaintiffs' claims are moot,[4] both the facial and as-applied challenges are capable of repetition yet evading review.

**A.     Legal standard.**

As the Court noted in its order, "a court is not prohibited from exercising jurisdiction over an otherwise moot case where . . . the case is capable of repetition, yet evading review." ECF 32 at 3 (quoting *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002)). A dispute falls under this exception when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation

---

[4]     Plaintiffs succeeded in gathering enough signatures to force an election and then successfully recalled then-Mayor Dan Holladay. Despite those events, this case is not moot. *See also* Response at 6, ECF 26 (stating that case is not moot). If the dispute is not moot, then there is no need to engage in the "capable of repetition yet evading review" analysis.

A case becomes moot "if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief." *Uzuegbunam v. Preczewski*, 592 U.S. ___, ___ (2021), slip op, at *1. As long as an award of nominal damages remains available, a case is not moot. *See id.* at *1 ("This case asks whether an award of nominal damages by itself can redress a past injury. We hold that it can."); *id.* at *10 ("If there is any chance of money changing hands, [the] suit remains live") (citing *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. ___ (2019)); *id.* at *11 ("[W]e conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right."); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8-9 (1978) (damages claim saves case from mootness).

In this case, plaintiffs' prayer for nominal damages for a completed violation of a legal right prevents this case from becoming moot. To find the case moot, the Court would first need to decide that nominal damages are not available, but such a finding would contravene the holding of *Uzuegbunam*. *See also* Response at 10-12, ECF 26 (discussing *Uzuegbunam* and plaintiffs' claim for nominal damages).

PAGE  4 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

that the same complaining party would be subjected to the same action again. ECF 32 at 3 (quoting *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988)).

      **B.**      **The facial challenges are capable of repetition yet evading review.**

If plaintiffs' *facial* challenges (Claim 1, Count One and Claim 2, Count One) are moot, they are capable of repetition yet evading review. The 90-day signature gathering limitation contained in ORS 249.875(1) is too short in duration to be fully litigated prior to its expiration, and there is a reasonable expectation that Ms. Gonzales and Mr. Marl will be subject to the 90-day limitation again.

In this case the challenged action is Ms. Riggs' enforcement of the 90-day signature gathering requirement. Because no case can be fully litigated in 90 days or less, the first element of the "capable of repetition yet evading review" test is met. *See Porter v. Jones,* 319 F.3d 483, 490 (9th Cir. 2003) ("Election cases often fall within [the capable of repetition yet evading review] exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits."); *see also Joyner v. Mofford,* 706 F.2d 1523, 1527 (9th Cir. 1983) (election cases are likely to escape review because appellate review often cannot be completed during the brief duration of an election). There can be no serious dispute on this point. Even if a hypothetical plaintiff filed litigation challenging the 90-day deadline on the earliest possible date (i.e. the same day that their recall petition is approved for signature gathering), final resolution of the matter within 90 days would be practically impossible.

The default case event timelines outlined in the Federal Rules of Civil Procedure (FRCP) and local rules illustrate this difficulty. Assuming a complaint were served on a defendant on the same day the litigation was filed (an unlikely occurrence), the defendant would have a minimum

PAGE 5 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

of 21 days to file a responsive pleading. FRCP(a)(1)(A)(i).[5] Any motion practice, as occurs in most cases, would then take *at least* a month or two to brief and receive a judicial decision. LR 7-1(e) & (f) (timing for motion practice briefing). Further, discovery generally takes a minimum of 120 days to complete, and often much longer. *See, e.g.,* ECF 2 at 3 (Discovery and Pretrial Scheduling Order). If there is any issue of material fact, a trial will be necessary, which is exceedingly unlikely to occur within 90 days of case filing, even if the parties stipulate to expedited case processing. And finally, any appeal of a trial court ruling will not be resolved within the 90-day period under ORS 249.875(1). In summary, it is very unlikely, and indeed practically impossible, for a case to be fully litigated within a 90-day period.

The data published by the Administrative Office of the U.S. Courts, on behalf of the Federal Judiciary, further suggests that fully resolving a case within 90 days is highly unlikely. In Oregon, the median time from civil case filing to trial is nearly three years.[6] 2020 Judicial Business of the United States Courts, Annual Report of the Director, Table T-3 at 3 (https://www.uscourts.gov/sites/default/files/data_tables/jb_t3_0930.2020.pdf). Plaintiffs request the Court to take judicial notice of this fact, FRE 201, which is likely consistent with the Court's own experience on the bench.

And finally, *as a legal matter*, 90 days is too short to achieve judicial resolution. Indeed, the U.S. Supreme Court has itself held that "a period of two years is too short to complete

---

[5] If such a case were filed in Oregon state court, the defendant would have a minimum of 30 days to file a responsive pleading. Or. R. Civ. Pro. 7 C(2).

[6] Three years is longer than the term of office for many elected officials subject to the recall. For example, members of the Oregon House of Representatives serve for two-year terms. Or. Const., Art. IV, § 4(1). Therefore, any recall-related litigation involving such an elected official is likely to become moot before the litigation is completed. If the elected official ceases to hold office by virtue of the expiration of their term, any pending or future recall effort would be pointless.

PAGE 6 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

judicial review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. ___ (2016), slip op., at *7 (citing *Southern Pacific Terminal Co. v. ICC*, 219 U. S. 498, 514– 516 (1911)); *see also Roe v. Wade*, 410 U.S. 113, 125 (1973) ("[T]he normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid."). If two years is insufficient to complete judicial review, so is 90 days. The first element of the "capable of repetition yet evading review" test is satisfied.

The second element of the test is also met because there is a reasonable expectation that Ms. Gonzales and Mr. Marl will be subject to the 90-day limitation again. As explained above, the proposed amended complaint includes allegations that Ms. Gonzales and Mr. Marl both have plans to participate in specific upcoming recall petition campaigns. *See* Ex. 1, ¶¶ 10-11. Ms. Gonzales intends to file a recall petition against an elected Oregon City official "in 2022, or as soon as this litigation is concluded," *Id.* at ¶ 10. And unless Oregon City reverses course from its current litigation position (which it has shown no indication of doing), it will continue to apply and enforce the 90-day signature gathering limitation of ORS 249.875(1). This, by itself, is enough to show a "reasonable expectation that the same complaining party [will] be subjected to the same action again." *Meyer*, 486 U.S. at 417 n.2; *see Wolfson v. Brammer*, 616 F.3d 1045, 1054-1055 (9th Cir. 2010) (candidate's stated intend to seek office "at some point in the future" sufficient to create reasonable expectation that elections dispute was capable of repetition under mootness exception). But the new allegations in the proposed amended complaint do not stop there. In addition to the specific allegation regarding her intent to file a recall petition against another Oregon City official, the proposed amended complaint also alleges that Ms. Gonzales

PAGE  7 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

has plans to participate in the recall petition campaigns against Clackamas County Commissioner Mark Shull (summer 2022) and Chair Tootie Smith (summer 2023). Ex. 1 at ¶ 10 n.3. These County recall petitions will be overseen by the Clackamas County Recorder, and not the Oregon City elections official but, as explained below, that distinction does not impact the mootness analysis.

In the Ninth Circuit, plaintiffs in the elections context that are seeking to avoid mootness under the "capable of repetition yet evading review" exception are not required to show that any future dispute about the 90-day signature gathering limitation would be between them and the same election officer. In this context, the mootness exception requires only that the "same complaining party" may be impacted by the future action, not that the same *defending* party be the one to take that future action.[7] Indeed, the Ninth Circuit routinely finds otherwise moot election cases to be capable of repetition even when the future hypothetical defendant elections officer is unknown. *See, e.g., Schaefer v. Townsend*, 215 F.3d 1031, 1032-1033 (9th Cir. 2000) (only Riverside County election officer took challenged action, but action capable of repetition in California on a statewide level by other election officers); *Wolfson*, 616 F.3d at 1055 (stated intention to seek elected office at "some point" in the future is sufficient to show issue is capable of repetition, even where plaintiff did not specify when or where they might file for office); *see also Int'l Org. of Masters, Mates & Pilots v. Brown,* 498 U.S. 466, 473 (1991) (holding an election case not moot because "[r]espondent has run for office before and may well do so again"). Therefore, Ms. Gonzales' allegations that she intends to participate in recall petition

---

[7] This is different than the standard in cases exclusively between *private* parties. *See, e.g., Lee v. Schmidt-Wenzel*, 766 F.2d 1387 (9th Cir. 1985) ("When the litigation is between *private* parties, we must consider whether the anticipated future litigation will involve the same defending party as well as the same complaining party.") (emphasis added).

PAGE 8 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

campaigns against County officials Shull and Smith are also independently sufficient to avoid mootness under the "capable of repetition yet evading review" exception.

For his part, in the proposed amended complaint Mr. Marl alleges that he "intends to participate in future recall petition campaigns in Oregon at the local, county, regional, and state levels, including one in 2022 (and likely 2023)." Ex. 1 at ¶ 11. However, because he is currently serving as an elected official in Oregon City, Mr. Marl is reluctant to identify with specificity which elected official(s) he intends to work to recall. *Id.* at n. 4. He does allege that he will serve in 2022 as a recall campaign manager, a campaign volunteer, or both, in 2022. *Id.* He will also sign the recall petition in that 2022 effort. *Id.*

In summary, when Ms. Gonzales and Mr. Marl participate in future recall petition campaigns, including at the Oregon City and Clackamas County levels in 2022 and 2023, they will be subject to the same 90-day signature gathering limitation that Ms. Riggs imposed in this case. As detailed in the proposed amended complaint, Ex. 1 at ¶¶ 29-39, the 90-day limitation inherently makes successfully qualifying for the ballot more difficult, more expensive, and more likely to fail. That will be true for *any* recall campaign subject to the 90-day limitation, and not just for recall campaigns that take place during the COVID-19 pandemic or during significant wildfire events. For these reasons, the dispute underlying plaintiffs' *facial* challenges is capable of repetition yet evading review.

      **C.**    **The as-applied challenges are capable of repetition yet evading review.**

If plaintiffs' *as-applied* challenges (Claim 1, Count Two and Claim 2, Count Two) are moot, they are capable of repetition yet evading review. Plaintiffs' as-applied challenges differ from their facial challenges in that the as-applied challenges are based on the COVID-19 pandemic and summertime wildfires, smoke, and evacuation orders. Ex. 1 at ¶¶ 53, 57. While it

PAGE 9 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

is impossible to know for certain whether similar conditions will reoccur in 2022 or 2023, it *is* certain that similar conditions will occur at some point in the future, and it is *likely* that they will occur to some extent during the summers of 2022 and 2023, when Ms. Gonzales and Mr. Marl are engaged in recall petition campaigns. The as-applied challenges are therefore capable of repetition, yet evading review.[8]

Plainly said, nobody knows when the COVID-19 pandemic will end, and plaintiffs will not pretend that there is a consensus in the scientific or medical communities about when it will end. There isn't one. Indeed, every expert prediction made over the past two years regarding when the COVID-19 pandemic will end has either been proven flatly wrong or remains conjecture. And even if plaintiffs were inclined to defend one of those theories, there is not enough space available in this supplemental brief (limited to 12 pages) to raise a respectable science-based argument. The global pandemic is too large a subject, there are too many factors and unknowns (Who could have accurately predicted the delta variant? The omicron variant?), and it serves no useful purpose to pretend that we know what will happen with the COVID-19 pandemic within the next month, let alone the next six months, year, two years, or ten years. We just don't have any credible way of knowing that information. In other words, the only certainty is uncertainty.

Strangely, now that the pandemic has stretched on for nearly two years, that uncertainty is itself evidence of a "reasonable expectation" that COVID-19 will negatively impact Ms. Gonzales' and Mr. Marl's 2022 (and perhaps 2023) recall campaigns. Early in the pandemic,

---

[8] The as-applied challenges evade review for the same reason that the facial challenges evade review, namely: it takes more than 90 days to fully litigate a civil case from filing, to trial, and through appeal. Therefore, this section focuses on the "capable of repetition" element of the test.

PAGE 10 – PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

when confronted with COVID-related as-applied mootness issues in the elections context, it was fair and equitable for courts to require plaintiffs to show evidence of why it was reasonable to expect that COVID-19 would continue to negatively impact their election-related efforts in the future. That was fair and equitable because COVID-19 was then globally viewed as a temporary and discrete problem to be solved at some date certain. But that paradigm was problematic. The lockdowns, the social distancing, the masking requirements, and then the vaccines; none of them "solved" the COVID-19 problem. And so the paradigm has rightly changed: COVID-19 is the new normal, and so is uncertainty about COVID-19. *See, e.g., Is the new COVID-19 normal a new, worrisome variant every few months?* (https://www.usatoday.com/story/news/2021/12/05/omicron-variant-new-normal-covid-19/8806236002/?gnt-cfr=1). In that new paradigm, it is no longer fair and equitable to require plaintiffs to prove when COVID-19 conditions will abate to such an extent that COVID-19 no longer negatively impacts signature gathering. That date is unknowable, and in any event the pandemic has induced such widespread behavioral and social change that figuring such a date is probably meaningless. Instead, the fair and equitable approach as we ride inertia to the two-year mark of the COVID-19 pandemic is to recognize that COVID-19 does, and will indefinitely continue to, negatively impact the chances of a direct democracy petition (recall or initiative) successfully qualifying for the ballot. Plaintiffs respectfully suggest that the Court should take that approach here. That is, because COVID-19 is the new normal, the burden should be placed on the *defendant* to prove that COVID-19 will not negatively impact Ms. Gonzales' and Mr. Marl's 2022 and 2023 recall campaigns. Of course, given COVID-19's stubborn resistance to forecasting, such a burden is a heavy one. *See* https://www.nytimes.com/interactive/2021/us/oregon-covid-cases.html.

While the COVID-19 pandemic will eventually subside, the same does not appear to be true of summer wildfires in Oregon. Almost all recent modeling indicates that more of Oregon will burn in the coming years, with some projections showing a 200% increase in burned area annually by 2050. *Climate change in Oregon by the numbers, from 0.1 to 200*, https://www.opb.org/article/2021/01/12/climate-change-oregon-effects. The state's average annual temperature is projected to increase five degrees Fahrenheit by 2050, and more than six degrees during summer. *Id.* The largest wildfires, like those that burned in Clackamas County in the summer of 2020, will also increase. *See id.*; *see generally Fifth Oregon Climate Assessment*, Oregon Climate Change Research Institute (2020) (https://oregonstate.app.box.com/s/7mynjzhda9vunbzqib6mn1dcpd6q5jka).

In light of the climate and wildfire projections for Oregon, including Clackamas County, there is a reasonable expectation that wildfire (including the resulting smoke and evacuations) will continue to impact Ms. Gonzales' and Mr. Marl's 2022 and 2023 recall campaigns. And although the occurrence of such devastating fires are not a certainty in any given year, the mere *threat* of such summer fires will substantially impact plaintiffs' strategic planning and campaign organizing. That is sufficient to satisfy the "reasonable expectation" prong of the mootness exception.

In summary, the dispute underlying plaintiffs' *as-applied* challenges is capable of repetition yet evading review.

## CONCLUSION

For the above reasons the Court should deny the motions to dismiss and grant leave for plaintiffs to file Exhibit 1 as the operative complaint in this case.

RESPECTFULLY SUBMITTED this 10th day of December 2021.

          *s/ Jesse A. Buss*
          Jesse A. Buss, OSB # 122919
          WILLAMETTE LAW GROUP
          411 5th St.
          Oregon City OR 97045
          Tel: 503-656-4884
          Fax: 503-608-4100
          Email: jesse@WLGpnw.com

          *Attorney for Plaintiffs Committee to Recall Dan Holladay, Jeana Gonzales, and Adam Marl*

## CERTIFICATE OF SERVICE

I certify that on December 10, 2021, I served the foregoing document upon the parties hereto by the method indicated below, and addressed to the following:

Kevin S. Mapes
Bateman Seidel Miner Blomgren Chellis & Gram, PC
1000 SW Broadway, Ste. 1910
Portland OR 97205
kmapes@batemanseidel.com
   *Of Attorneys for Defendant Kattie Riggs*

Brian Simmonds Marshall, OSB # 196129
Shaunee Morgan, OSB # 194256
Oregon Department of Justice
100 SW Market Street
Portland OR 97201
Brian.S.Marshall@doj.state.or.us
Shaunee.Morgan@doj.state.or.us
   *Of Attorneys for Proposed-Intervenor State of Oregon*

by electronically transmitting the attached document(s) to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*s/ Jesse A. Buss*
Jesse A. Buss, OSB No. 122919
Attorney for Plaintiffs