**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 29 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| COMMITTEE TO RECALL DAN HOLLADAY; et al., <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> JAKOB WILEY, City Recorder for the City of Oregon City, in his official capacity, <br><br> Defendant-Appellee, <br><br> STATE OF OREGON, <br><br> Intervenor-Defendant-Appellee. | No.  23-35107 <br><br> D.C. No. 3:20-cv-01631-YY <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted April 4, 2024
Portland, Oregon

Before: OWENS and FRIEDLAND, Circuit Judges, and RAYES,[**] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

Plaintiffs Jeana Gonzales, Adam Marl, and the Committee to Recall Dan Holladay (collectively, "Plaintiffs") appeal the dismissal of their lawsuit challenging under the federal and Oregon constitutions the 90-day signature-gathering deadline for Oregon recall petitions imposed by Oregon Revised Statute § 249.875(1). Although the Complaint fails to state a claim under federal law, the district court's reasons for denying leave to amend on that claim were erroneous, as were its reasons for holding that it lacked jurisdiction over the state law claim and the federal claim for nominal damages and declaratory relief. We therefore remand for the district court to reconsider whether to grant leave to amend on the federal claim, whether to exercise supplemental jurisdiction over the state law claim, and whether to certify any question related to Plaintiffs' state law claim to the Oregon Supreme Court.

1. Defendant, the City Recorder of Oregon City, is not entitled to sovereign immunity under the Eleventh Amendment or *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Local government officials are not ordinarily entitled to sovereign immunity. *See Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401 (1979). Neither party contends that the City is an arm of the state under *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (en banc), *cert petition docketed*, No. 23-6922 (Mar. 7, 2024), or any other test, so Defendant cannot benefit from the sovereign immunity accorded to arms of the

state.

Nor do any of the other cases upon which Defendant relies show that Defendant has sovereign immunity. The test articulated in *McMillian v. Monroe County*, 520 U.S. 781 (1997), analyzes whether a municipal official was acting as a final policymaker for the state or the municipality for the purposes of determining whether to hold the official's local government employer liable for that official's actions under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *See McMillian*, 520 U.S. at 784-86; *see also, e.g.*, *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir. 2000). Even assuming Defendant is correct that our court has expanded this test to the sovereign immunity context, that would simply mean that a person acting as a final policymaker for the state is entitled to sovereign immunity. Here, no party argues that Defendant was acting as a final policymaker, either for the State or the City, when applying the 90-day deadline. Neither Oregon Revised Statute § 249.875(1) nor Oregon City Charter Chapter VI, § 26 suggests that the City Recorder had any discretion in this context. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

The test in *Buffin v. California*, 23 F.4th 951 (9th Cir. 2022), also does not show that Defendant has sovereign immunity. In *Buffin*, we articulated a test to determine whether a state could be held liable for attorneys' fees under 42 U.S.C. § 1988 and did not apply that test to determine whether any official was entitled to

sovereign immunity. *Id.* at 960, 963 n.5. Our court has never subsequently applied that test to determine whether an official was entitled to sovereign immunity.

2. Because Defendant is not entitled to sovereign immunity and because Plaintiffs have requested nominal damages in addition to declaratory and injunctive relief, this case is not moot as to any claim by any Plaintiff. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021).

3. Plaintiffs have failed to state a claim under the First Amendment. We have treated the test in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), as binding in previous election cases. *See Pierce v. Jacobsen*, 44 F.4th 853, 860-66 (9th Cir. 2022); *Chula Vista Citizens for Jobs and Fair Competition v. Norris*, 782 F.3d 520, 534, 536 (9th Cir. 2015) (en banc). The logic underlying the *Angle* test applies equally to laws regulating recall petitions as to laws regulating initiatives, so the same test should apply to both contexts. Recall elections affect the total quantum of speech on a particular issue by affecting the timing and context of an election—therefore causing voters to focus on different topics—as well as by increasing the number of elections in many situations.

Plaintiffs have not alleged facts sufficient to subject the 90-day deadline to strict scrutiny under the *Angle* test because their allegations fail to show that the deadline "significantly inhibit[s] the ability of [recall] proponents to place [a recall] on the ballot." *Angle*, 673 F.3d at 1133. Plaintiffs would need to show that, "in

4

light of the entire statutory scheme regulating ballot access, 'reasonably diligent'" recall proponents cannot "normally gain a place on the ballot," and instead "will rarely succeed in doing so." *Id.* (quoting *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008)).  But the facts alleged in the Second Amended Complaint show only that Plaintiffs faced significant barriers to collecting enough signatures within the 90-day deadline under the specific circumstances they faced at the time—during the COVID-19 pandemic, under emergency orders that limited public gatherings and required social distancing—which is insufficient to support their facial challenge.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (explaining that "a plaintiff can only succeed in a facial challenge by 'establishing that no set of circumstances exists under which the Act would be valid,' *i.e.,* that the law is unconstitutional in all of its applications" (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987))).  Plaintiffs' conclusory allegations that "it is well-established that most recall campaigns fail to obtain the requisite number of petition signatures," and "[t]his is, in large (and obvious) part, due to lack of adequate time to gather signatures" are also insufficient to allow Plaintiffs to survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

       The 90-day deadline survives "less exacting review" because it "furthers 'an important regulatory interest.'"  *Angle*, 673 F.3d at 1132, 1135 (quoting *Prete v.*

*Bradbury*, 438 F.3d 949, 961, 969 (9th Cir. 2006)). Whether a law furthers an important regulatory interest is a question that may be decided at the motion to dismiss stage. *See, e.g.*, *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1012, 1017-19 (9th Cir. 2002); *see also Caruso v. Yamhill County ex rel. Cnty. Comm'r*, 422 F.3d 848, 861-62 (9th Cir. 2005).

The 90-day deadline serves the important regulatory interest of ensuring that the recall effort has sufficient grassroots support before holding a recall election. *See Angle*, 673 F.3d at 1135. The 90-day deadline serves this purpose by ensuring that there are enough people at some given time who support recalling the official.

The 90-day deadline also serves the important regulatory interest of preventing abuse of the recall process. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 197 (2010). Without the deadline, recall proponents could collect signatures and then wait to submit them, either to use them as a threat against the official or to time the recall election to manipulate the outcome.

4. The district court abused its discretion in denying leave to amend. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (holding that a district court abuses its discretion by denying leave to amend "unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities" and explaining that "[a] district court also abuses its discretion when it commits an error of law").

Two of the district court's reasons for holding that amendment would be futile—sovereign immunity and mootness—were legally erroneous. As we have explained, Defendant is not entitled to sovereign immunity, and this case is not moot as to any claim by any Plaintiff.

The district court's reliance on the letter sent from Plaintiffs' counsel to Defendant during the signature-gathering period was also erroneous. The fact that Plaintiffs were confident, given the levels of public support for their particular recall effort, that they would be able to gather the signatures under non-COVID conditions does not render it impossible for Plaintiffs to allege facts showing that recall proponents *in general* will not *normally* be able to collect enough signatures because of the 90-day deadline.[1] *See Angle*, 673 F.3d at 1133.

The district court's only other reason, that the data Plaintiffs would add "would not establish the link between failed petitions and the alleged severe burden of the 90-day time restriction," was also an abuse of discretion. Because Plaintiffs asserted that their data would show such a link, this is not a ground on which we can affirm the denial of leave to amend absent explanation from the

---

[1] The district court was permitted to consider the letter because it was attached to the complaint and is therefore treated as part of the complaint. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

district court, which was lacking.[2]  We therefore vacate the denial of leave to amend and remand for further proceedings in which the district court should either grant leave to amend on the federal claim or provide a clear explanation for not doing so.

As we explained above, the district court's dismissal of the state law claims on *Pennhurst* grounds was erroneous.  But whether the district court will ultimately exercise supplemental jurisdiction over the state law claim may depend on whether it grants leave to amend on the federal claim or, if so, dismisses the federal claim again after amendment.  *See* 28 U.S.C. § 1367(c)(3).  On remand, the district court should therefore first reconsider whether to grant leave to amend on the federal claim, then determine whether to exercise supplemental jurisdiction over the state law claim in light of that decision, and, if so, whether to certify Plaintiffs' state law question to the Oregon Supreme Court.

For the foregoing reasons, we **AFFIRM** dismissal of the Second Amended Complaint but **VACATE** the denial of leave to amend and **REMAND** for further proceedings.

---

[2] Plaintiffs also have not been given repeated chances to amend their complaint to cure the current deficiency.