UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

COMMITTEE TO RECALL DAN HOLLADAY, JEANA GONZALES, and ADAM MARL,

Plaintiffs,

v.

JAKOB WILEY, City Recorder for Oregon City, in his official capacity,

Defendant.

and

STATE OF OREGON,

Intervenor.

Case No. 3:20-cv-01631-YY

FINDINGS AND RECOMMENDATIONS

YOU, Magistrate Judge.

**FINDINGS**

Plaintiffs, who are the Committee to Recall Dan Holliday, Jeana Gonzales, and Adam Marl, brought this suit against defendant Jakob Wiley (in his official capacity as the City Recorder for Oregon City) asserting that the 90-day deadline for recall proponents to collect a sufficient number of signatures imposed by O.R.S. 249.875 violated their federal and state constitutional rights. The State of Oregon joined the case as an intervenor. *See* Order (Aug. 9,

2021), ECF 30. On motions from both defendant and the State[1], this court previously dismissed plaintiffs' First Amendment claims because plaintiffs failed to allege facts sufficient to show that the 90-day restriction either limited "a petitioner's ability to communicate, one-on-one, with potential voters" or was so severe that "reasonably diligent petitioners cannot normally qualify for a recall election." Findings and Recommendations 43–44, ECF 52, adopted by Opinion and Order, ECF 59 (citing *Meyer v. Grant*, 486 U.S. 414, 424 (1988), *Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012)) (simplified). Plaintiffs state law claims were dismissed as moot or because they were barred by sovereign immunity. The complaint was dismissed without leave to amend in part because plaintiff's proposed amendment to the First Amendment claim "to include data on the fact that most recall petitions fail would not establish the link between failed petitions and the alleged severe burden of the 90-day time restriction." Opinion and Order 2, ECF 59.

Plaintiffs appealed, and the Ninth Circuit affirmed that plaintiffs did "not alleg[e] facts sufficient to subject the 90-day deadline to strict scrutiny under the *Angle* test because their allegations fail to show that the deadline 'significantly inhibits the ability of recall proponents to place a recall on the ballot.' " 9th Cir. Memo. 4, ECF 62 (quoting *Angle*, 673 F.3d at 1133) (simplified). The panel disagreed, though, that plaintiffs' proposed amendment to their First Amendment claim was futile and with the reasons the court gave for dismissing plaintiffs' state law claim. *Id.* at 7–8. The case was remanded with instructions to "first reconsider whether to grant leave to amend on the federal claim, then determine whether to exercise supplemental jurisdiction over the state law claim in light of that decision, and, if so, whether to certify

---

[1] Where necessary for clarity, citations here to the briefing regarding the first round of motions to dismiss are made to "Motion to Dismiss I" or "Response I," and so on, whereas references to the briefing regarding the second round of motions to dismiss after remand are made to "Motions to Dismiss II" or "Response II."

Plaintiffs' state law question to the Oregon Supreme Court." *Id.* at 8. The Ninth Circuit suggested that "facts showing that recall proponents *in general* will not *normally* be able to collect enough signatures because of the 90-day deadline" would be particularly useful in attempting to state a claim under the controlling *Angle* standard. *Id.* at 7 (emphasis in original).

After the State's petition for writ of certiorari to the United States Supreme Court was denied, the case returned to this court and the parties conferred about how to proceed. *See* Joint Status Report, ECF 75. That eventually led to plaintiffs filing a Third Amended Complaint. The State moved to dismiss this new complaint, and defendant joined. *See* ECF 79, 80. After a hearing on the State's motion, plaintiffs filed (as their counsel had indicated he would during the hearing) a motion to certify a question to the Oregon Supreme Court. ECF 89. The motions are now fully briefed, and because the issues raised in both the motion to dismiss and the motion to certify overlap, both are resolved here.

Curiously, plaintiffs' Third Amended Complaint does not contain any additional factual allegations purporting to show that recall proponents "in general will not normally be able to collect enough signatures because of the 90-day deadline." 9th Cir. Memo. 7, ECF 62 (emphasis omitted). Instead, the Third Amended Complaint seems to suggest, and plaintiffs' subsequent briefing confirms, that plaintiffs now assert a new legal theory for their First Amendment claim, one that according to plaintiffs "is not dependent upon alleging and proving multitudinous facts going back years, if not decades." Pl. Resp. Mot. Dismiss II 2, ECF 83.

Plaintiffs now contend that their First Amendment claim "depends entirely on the scope of the recall right under Article II, section 18 of the Oregon Constitution." Pl. Resp. Mot. Dismiss II 2, ECF 83; *see also* Third Am. Compl. ¶¶ 46–48; Pl. Mot. Certify 1, ECF 89 ("[I]t is impossible to resolve Plaintiffs' federal claim until their state law claim is resolved."). Plaintiffs'

theory is that under the *Angle* test, it must be true that, whether the election regulation imposes a severe burden on plaintiffs' First Amendment rights or a "lesser burden," in either case, the burden must be justified by at least some legitimate state interest. Pl. Resp. Mot. Dismiss II 4, ECF 83. According to plaintiffs, it is "unknowable whether the state has a 'compelling' interest or even an 'important regulatory interest' in imposing a signature gathering deadline until the Oregon Supreme Court decides if the constitutional recall right includes the right to circulate petitions for signature *without time limitation.*" *Id.* (emphasis in original). To plaintiffs' read, it is critical for their federal First Amendment claim to understand or determine whether, as a matter of Oregon constitutional law, the Oregon legislature is empowered by the Oregon constitution to impose a signature-gathering deadline at all. *Id.* at 3. Plaintiffs assert:

> [I]f the Oregon Supreme Court . . . decides that the Oregon Constitution does *not* allow the legislature to impose such signature gathering deadlines, then there is no way that the State can have either a 'compelling' or an 'important' interest in imposing one. Indeed, if the Oregon Constitution prohibits signature gathering limitations, then the 90-day limitation cannot even pass rational basis review under the First Amendment because the State has no legitimate interest in enforcing an unconstitutional law.

*Id.* at 5 (emphasis in original).

But whether the Oregon Supreme Court interprets the Oregon constitution in such a way that, as a matter of Oregon constitutional law, the Oregon legislature does not have the power to impose a 90-day deadline on signature gathering is beside the point for whether the 90-day deadline violates plaintiffs' *federal* First Amendment rights. It is well-established that "[s]ection 1983 limits a federal court's analysis to the deprivation of rights secured by the federal 'Constitution and laws,' " and, by corollary, a violation of a state law that "amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Lovell By & Through Lovell v. Poway Unified Sch.*

*Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) (quoting 42 U.S.C. § 1983); *see also Hitt v. Douglas Cnty., Oregon*, No. 6:18-cv-01642-AA, 2019 WL 2076537, at *2 (D. Or. May 9, 2019) ("[V]iolations of state law 'do not, on their own, give rise to liability under § 1983.' ") (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F. 3d 465, 371 (9th Cir. 1998)); *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017) (explaining that "[f]ederal due process does not necessarily entitle a plaintiff to the same procedures provided by state law" and that the question "under federal law, [of] what process is due is determined by context, to be analyzed in accordance with the three-part balancing test" developed by federal courts).

As a matter of federal First Amendment law, the analysis returns to *Angle*. "Under the First Amendment, election regulations imposing *severe burdens* on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Angle*, 673 F.3d at 1132 (simplified) (emphasis in original). "*Lesser burdens* trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (simplified) (emphasis in original). In applying this standard, courts are directed to consider that "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Id.* (quoting *Buckley v. Am. Constitutional Law Found., Inc.* (*ACLF* ), 525 U.S. 182, 191 (1999)).

*Angle* identifies two ways that regulations on the ballot initiative process can severely burden core political speech: (1) where the regulations "restrict one-on-one communication between petition circulators and voters," and (2) where the regulations "make it less likely that proponents will be able to garner the signatures necessary to place an initiative on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." 673 F.3d at 1132 (citing *Meyer*, 486 U.S. at 422) (internal quotation marks omitted).

Here again, plaintiffs seemed to have at least shifted their theory; in responding to the original motions to dismiss, plaintiffs asserted that the 90-day deadline was subject to strict scrutiny under the second *Angle* prong. *See* Resp. Mot. Dismiss I 21, ECF 26 (asserting that the "ballot petition deadlines . . . make it less likely that proponents can obtain the necessary signatures to place issues on the ballot"). Now, under their new theory, plaintiffs assert that the question is "whether prohibiting one-on-one communication between petition circulators and voters after the expiration of the 90-day period limits the number of voices who will convey the proponents' message." Resp. Mot. Dismiss II 1–2 n.1, ECF 83 (quoting *Buckley*, 525 U.S. at 194-95) (simplified).

But this new theory is not a good fit for the first prong under *Angle*. For one thing, the only case plaintiffs cite in support of this new theory is readily distinguishable. In *Buckley*, the Supreme Court struck down three conditions that Colorado imposed on its ballot initiative process: "(1) the requirement that initiative-petition circulators be registered voters; (2) the requirement that they wear an identification badge bearing the circulator's name; and (3) the requirement that proponents of an initiative report the names and addresses of all paid circulators and the amount paid to each circulator[.]" 525 U.S. at 186 (internal citations omitted). There were at least 400,000 unregistered eligible voters among the state's 2.3 million voters, meaning the regulation obviously "decrease[d] the pool of potential circulators." *Id.* at 195. Moreover, the requirement that circulators wear identification badges and disclose their address and amounts they were paid exposed circulators "to the risk of 'heat of the moment' harassment" and "force[d] paid circulators to surrender their anonymity enjoyed by their volunteer counterparts." *Id.* at 199, 204.

Here, by contrast, the complaint does not allege facts showing that the 90-day deadline actually reduced the number of potential circulators for plaintiffs' recall initiative, or had any impact on the number of potential voters they could reach. Instead, the allegations (despite plaintiffs' change in underlying theory) are focused on the time limitations imposed by the regulation. "If the campaign had had more than 90 days to gather signatures," the complaint alleges, "it would not have dominated the campaign volunteers' lives . . . to the same extent and intensity." Third Am. Compl. ¶ 32, ECF 76. The 90-day deadline allegedly "required many campaign volunteers to dedicate most, if not all, of their free time over a 90-day period to campaign efforts" and this "was a hardship to the volunteers and to the campaign because it required volunteers to ignore other important matters, both personal and professional, to their detriment." *Id.* Because the recall campaign occurred during the state of emergency declared by the state's governor during the COVID-19 pandemic, plaintiffs' signature gathering efforts had to adapt to account for the protocols limiting large public gatherings and effectively rendered impractical the door-to-door canvassing for signatures upon which campaigns at other times have relied. *See id.* ¶ 25. Plaintiffs' campaign eventually recruited more than 100 volunteers, but despite their "well-organized and efficient" efforts, as the 90-day deadline approached and it appeared they were not on track to collect the 2,400 signatures needed to qualify for the ballot, they paid a company $8,000 to distribute a "direct mailer" to try and bridge the gap. *Id.* ¶¶ 27–29. The mailer was successful in securing over 1,000 new signatures and thus the campaign secured more than 3,000 raw signatures. Although the mailer worked, plaintiffs allege that if they had more time than the 90-day deadline allowed, the mailer would not have been necessary. *See id.* ¶ 31 ("[B]ut-for the 90-day deadline, the campaign would *not* have utilized the direct

mailer tactic, and therefore would *not* have incurred the expense associated with the direct mailer.") (emphasis in original).

Thus, the problem alleged in the Third Amended Complaint is not related to the available universe of potential signature gatherers, as was at issue in *Buckley*, but rather, the time available for the campaign to complete the task of collecting the required number of signatures.[2] And despite the Ninth Circuit's clear direction that plaintiffs needed to bolster the factual allegations in their complaint to demonstrate "that recall proponents *in general* will not *normally* be able to collect enough signatures because of the 90-day deadline," 9th Cir. Memo. 7, ECF 62 (emphasis in original), plaintiffs' Third Amended Complaint contains no new facts in that regard.

Therefore, just as plaintiffs' previous complaint "fail[ed] to show that the deadline significantly inhibits the ability of recall proponents to place a recall on the ballot," and thus was not subject to heightened scrutiny, *id.* at 4–5, the Third Amended Complaint also fails on that score. And, just as before, "[t]he 90-day deadline survives less exacting review because it furthers an important regulatory interest" of "ensuring that the recall effort has sufficient grassroots support before holding a recall election" and "preventing abuse of the recall process." *Id.* at 5–6 (simplified). Those interests, as a matter of federal First Amendment law, are sufficient to justify the 90-day deadline under the *Angle* test, notwithstanding plaintiffs' argument that such a restriction may violate plaintiffs' rights under the Oregon constitution. *See Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 736 (9th Cir. 2012) (explaining that state-law claims

---

[2] Notably, one of the regulations that the plaintiffs in *Buckley* challenged at the district and appellate court level was the state's six-month deadline for obtaining the required number of signatures to qualify the initiative for the ballot. *See Am. Const. L. Found., Inc. v. Meyer*, 120 F.3d 1092, 1096–97 (10th Cir. 1997). The Tenth Circuit found that the six-month window was a "neutral ballot access regulation" that was "not a significant burden on the ability of organized proponents to place a measure on the ballot" and thus was not subject to strict scrutiny. *Id.* at 1098–99.

can form the basis of a section 1983 claim "only where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States") (simplified); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) (ruling that the plaintiff's Fourteenth Amendment equal protection claim failed because it depended on the defendant's alleged violations of state statutes, which "may give rise to liability under state law, but . . . do not, on their own, give rise to liability under § 1983"); *see also Citizens For Honest & Responsible Gov't v. Sec'y of State*, 116 Nev. 939, 946 (2000) ("While we have no doubt that the process of collecting signatures for a recall petition is an arduous one, we conclude that the sixty-day limitation does not impose a 'severe' burden on the petitioners.").

Because plaintiffs' federal claims are subject to dismissal, the next question is whether this court should exercise supplemental jurisdiction over plaintiffs' state law claims. *See* 9th Cir. Memo 8, ECF 62. Where a district court has original jurisdiction in a civil action, it retains supplemental jurisdiction over state law claims that form part of the same case or controversy. 28 U.S.C. § 1367(a). However, the court has discretion to decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001). The court's discretion is guided by considerations of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Where all federal claims have been eliminated, these factors usually favor relinquishing jurisdiction over the remaining state law claims. *Id.* ("When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").

Here, plaintiffs' federal claims fail because the allegations in the complaint fail to state a claim, and thus they are subject to dismissal under Rule 12(b)(6). Not only does the dismissal at this early, pleading stage of the case (despite the overall age of the case) favor declining the exercise of supplemental jurisdiction here, plaintiffs themselves assert that it should be the Oregon Supreme Court, and not this court, that ultimately decides plaintiffs' state law claims. *See* Pl. Resp. Mot. Dismiss 1, ECF 83 (asserting that "the question of state law" in plaintiffs' complaint "raises novel issues under Article II, section 18, of the Oregon Constitution" and that "the Oregon Supreme Court should resolve that question following a certification order from this Court"); Pl. Mot. Certify Question 1, ECF 89 (asserting that "[t]he Oregon Supreme Court should provide [the] clarification" of the "scope of the recall right under the Oregon Constitution"). Therefore, declining supplemental jurisdiction is appropriate. Because exercising supplemental jurisdiction is not warranted here, it is not necessary to reach the issues raised by plaintiff's Motion to Certify Question of State Law to the Oregon Supreme Court. ECF 89.

**RECOMMENDATIONS**

The State's Motion to Dismiss (ECF 79) should be granted and plaintiff's Motion to Certify Question of State Law to the Oregon Supreme Court (ECF 89) should be denied as moot.

**SCHEDULING ORDER**

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Wednesday, July 22, 2026. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

**NOTICE**

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED July 8, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge